RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 17a0196p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 16-2376

GEORGE HOWARD MANDOKA,

*Defendant-Appellant.*

─────────────

Appeal from the United States District Court
for the Eastern District of Michigan at Bay City.
No. 1:15-cr-20418-1—Thomas L. Ludington, District Judge.

Argued: August 3, 2017

Decided and Filed: August 24, 2017

Before: SILER, CLAY, and WHITE, Circuit Judges.

─────────────

## COUNSEL

**ARGUED:** Stevens J. Jacobs, JACOBS LAW OFFICE, Bay City, Michigan, for Appellant. Roy Kranz, UNITED STATES ATTORNEY'S OFFICE, Bay City, Michigan, for Appellee. **ON BRIEF:** Stevens J. Jacobs, JACOBS LAW OFFICE, Bay City, Michigan, for Appellant. Roy Kranz, UNITED STATES ATTORNEY'S OFFICE, Bay City, Michigan, for Appellee.

─────────────

## OPINION

─────────────

CLAY, Circuit Judge. Defendant George Howard Mandoka ("Defendant") appeals from the judgment entered by the district court on September 27, 2016, sentencing him to concurrent terms of: (i) life in prison for three counts of aggravated sexual abuse, pursuant to

18 U.S.C. § 2241(c), one count of sexual abuse, pursuant to 18 U.S.C. § 2242(2), and one count of abusive sexual contact, pursuant to 18 U.S.C. § 2244(a)(2), (5); (ii) fifteen years in prison for two counts of sexual abuse of a minor, pursuant to 18 U.S.C. § 2243(a); and (iii) three years in prison for one count of abusive sexual contact, pursuant to 18 U.S.C. § 2244(a)(2), (5). In brief, Defendant was convicted of repeatedly sexually abusing his step-daughter and his niece over a period of years. He argues that the district court erred in admitting evidence during his trial: (i) of his past sexual assaults pursuant to Federal Rules of Evidence 413 and 403; and (ii) that his victims witnessed him physically assault his wife pursuant to Federal Rules of Evidence 404(b) and 403. He asks us to vacate his convictions and sentence and remand for a new trial. The district court had original jurisdiction over these offenses because they occurred on tribal land, and we have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

For the reasons set forth below, we **AFFIRM** Defendant's convictions.

## BACKGROUND

### I.      Factual History

Defendant is a member of the Saginaw Chippewa Tribal Nation. Prior to his arrest and incarceration, he resided on the Isabella Reservation in Mt. Pleasant, Michigan with his (now former) wife, Darcy Mandoka ("Darcy"), and his step-daughter (Darcy's daughter) B.J. This case concerns Defendant's sexual abuse of B.J. and his nieces, J.G. and E.B., when the three were young children.[1]

#### A.      Abuse of J.G. and E.B.

J.G. is the daughter of Defendant's sister. At trial, J.G. testified that in the summer of 1988, when she was nine years old, she awoke to find Mr. Mandoka touching her vagina under her clothing. Mr. Mandoka ceased this touching after J.G. began crying, but later renewed this abuse on two separate occasions. Mr. Mandoka's behavior towards J.G. apparently did not escalate beyond genital fondling.

---

[1]We use the victims' initials to protect their privacy.

E.B. is J.G.'s sister. E.B. testified that Defendant abused her from June 1995 through September 1999, when E.B. was between ten and fourteen years old. During this period, E.B. and J.G. would regularly spend the night at Defendant's home. On these occasions, Defendant would sometimes wake E.B. up and force her to watch pornographic movies with him while he masturbated. After roughly a year of this behavior, Defendant progressed to waking E.B. up, rubbing her breasts under her clothing, and penetrating her vagina with his fingers. This occurred on more than ten occasions. E.B. did not report the abuse because she observed Defendant physically abusing Darcy on several occasions, and was afraid that Defendant would hurt her (E.B.) if she notified the police.

### B.    Abuse of B.J.

According to the testimony introduced at trial, Defendant repeatedly sexually abused B.J. while she was living with him and Darcy at the family's home on the Isabella Reservation. The abuse commenced when B.J. was ten years old, and ceased when she was sixteen. During this period, Defendant regularly sneaked into B.J.'s room at night while she was sleeping and touched her breasts and genitals under her clothing. He often penetrated her vagina with his finger, and sometimes forced her to masturbate him with her hand.

While B.J. was a child, she did not report Defendant's abuse to either her mother or the authorities.[2] Later, when she turned eighteen, she wrote a letter to her mother detailing the abuse. Darcy confronted Defendant with the letter, and he confessed to abusing B.J. Despite this confession, neither B.J. nor Darcy reported the abuse to the police, because they did not want to leave Darcy's youngest children (B.J.'s step-siblings) fatherless. B.J. subsequently disclosed the abuse to other family members, which led to a family meeting at which Defendant admitted to having sexually abused B.J. Nevertheless, the abuse remained a family secret until 2015, when Defendant and Darcy divorced. At that time, Darcy began taking her two youngest daughters with her to group therapy for reasons related to the divorce. During these therapy sessions, Defendant's abuse of B.J. was disclosed to the counselor. The two girls subsequently met individually with a second counselor, to whom at least one of the girls apparently also

---

[2]She did, however, discuss the abuse with a friend at school in the sixth grade.

disclosed Defendant's abuse of B.J.  The second counselor reported the abuse to tribal authorities, who contacted the police.

## II.    Procedural History

On July 8, 2015, a federal grand jury in the Eastern District of Michigan indicted Defendant for five sex offenses related to his abuse of B.J.  On July 22, 2015, the grand jury returned a first superseding indictment adding a charge against Defendant for abusing J.G.  The grand jury subsequently returned a second superseding indictment on March 10, 2016, adding charges related to Defendant's abuse of E.B.  Defendant elected to proceed to trial.

On June 9, 2016, the government filed a notice that it intended to offer testimony that Defendant had physically abused Darcy in front of his victims as prior bad acts evidence pursuant to Federal Rule of Evidence 404(b), on the ground that it would explain why Defendant's victims did not report the abuse.  The next day, Defendant filed a motion *in limine* to exclude the spousal abuse evidence as improper character evidence, arguing that the government did not seek to offer the evidence for a proper purpose, and that it would unfairly inflame the jury against Defendant.  Subsequently, in preparing for trial, the government realized that Defendant's abuse of J.G. did not occur on territory administered by the federal government.  Thus, on June 16, 2016, the government filed a motion to dismiss Count 6 of the second superseding indictment (which charged conduct related to J.G.'s abuse) for lack of subject matter jurisdiction.  In its motion, the government also announced its intent to present evidence that Defendant abused J.G. as prior sexual assault evidence pursuant to Federal Rule of Evidence 413.  Defendant responded with a second motion *in limine*, arguing, *inter alia*, that he had received inadequate notice of the government's intent to offer the evidence, in violation of Rule 413(b).

Defendant's trial began on June 21, 2016.  Prior to the opening statements, the district court heard brief arguments as to the two pending motions.  The district court ruled that most of the spousal abuse evidence was admissible under Rule 404(b), and that Defendant's molestation of J.G. was admissible under Rule 413.  Defendant was subsequently convicted on all counts.

On September 27, 2016, the district court entered a judgment sentencing Defendant to life in prison, as well as lesser concurrent sentences. The next day, Defendant filed a timely notice of appeal.

## DISCUSSION

### I.    Rule 413 Challenges

#### A.    Standard of Review

We review the admission of evidence under Federal Rule of Evidence 413 for abuse of discretion. *United States v. LaVictor*, 848 F.3d 428, 448–49 (6th Cir. 2017); *United States v. Seymour*, 468 F.3d 378, 386 (6th Cir. 2006). "A district court abuses its discretion when it applies the incorrect legal standard, misapplies the correct legal standard, or relies upon clearly erroneous findings of fact." *United States v. Fowler*, 819 F.3d 298, 303 (6th Cir. 2016) (quoting *United States v. Bridgewater*, 606 F.3d 258, 260 (6th Cir. 2010)).

#### B.    Analysis

Federal Rule of Evidence 413 provides in relevant part:

> **Permitted Uses.** In a criminal case in which a defendant is accused of sexual assault, the court may admit evidence that the defendant committed any other sexual assault. The evidence may be considered on any matter to which it is relevant.

> **Disclosure to the Defendant.** If the prosecutor intends to offer this evidence, the prosecutor must disclose it to the defendant, including witnesses' statements or a summary of the expected testimony. The prosecutor must do so at least 15 days before trial or at a later time that the court allows for good cause.

Fed. R. Evid. 413(a)–(b). Additionally, we have explained that evidence "otherwise admissible under Rule 413 is still subject to Rule 403 balancing." *LaVictor*, 848 F.3d at 449. Federal Rule of Evidence 403 provides that a "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." "On review, this Court must give 'the evidence its maximum reasonable

probative force and its minimum reasonable prejudicial value.'" *LaVictor*, 848 F.3d at 449 (quoting *Seymour*, 468 F.3d at 386).

At trial, the government offered testimony by J.G. that Defendant had abused her when she was a young child. The district court allowed the government to put on this evidence because the abuse against J.G. was another of Defendant's prior "sexual assault[s]" as that term is defined in Rule 413. *See* Fed. R. Evid. 413(d). On appeal, Defendant argues that the district court abused its discretion in admitting this evidence because: (i) "the sexual assault which J.G. testified to was not relevant or similar to the sexual assaults described by E.B. and [B.J.];" (ii) the government failed to give timely notice of J.G.'s testimony pursuant to Rule 413; and (iii) "the evidence was unfairly prejudicial" in violation of Rule 403. (App. R. 22, Appellant's Br., at 18.) We will address each of these arguments in turn.

### 1.     Relevance

Defendant first alleges that his sexual assault against J.G. was not relevant to his assaults against E.B. and B.J., J.G.'s sister and cousin, respectively, because the assaults were too dissimilar from one another to meet the relevance threshold specified by Rules 413 and 401. The differences Defendant points to between the assaults are that: (i) while J.G. testified that Defendant touched her vagina without penetrating it, E.B. and B.J. testified that Defendant penetrated their vaginas with his finger; and (ii) B.J. testified that Defendant forced her to masturbate him, while E.B. and J.G. did not testify to such abuse.

We make short work of this argument. Rule 413(a) permits the government to admit evidence of a defendant's prior sexual assaults as propensity evidence "on any matter to which [the assaults are] relevant." "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. When applying Rule 413, evidence of prior assaults is relevant when "[t]he facts of the previous sexual assaults" are similar to the charged offense. *LaVictor*, 848 F.3d at 450. The assaults in this case were more than similar enough to pass this "very low" threshold for relevance. *See, e.g.*, *United States v. Whittington*, 455 F.3d 736, 739 (6th Cir. 2006) (noting that "the relevance threshold is very low under Rule 401"). All three

assaults involved Defendant fondling the genitals of three of his female family members—his daughter and his two nieces—each of whom were roughly the same age at the time of their respective assaults. J.G.'s abuse allegations made it more probable that Defendant committed similar abusive acts against J.G.'s sister and cousin, and thus this evidence was relevant to Defendant's guilt of the offenses charged in the indictment. *See, e.g.*, *United States v. Crow Eagle*, 705 F.3d 325, 327–28 (8th Cir. 2013) (per curiam) (assaults were sufficiently similar for Rule 413 purposes where "[w]hen allegedly abused, each [victim] was a younger family member of [the defendant] between six and eleven years old" and "the methods of assault were similar, all involving inappropriate touching"); *United States v. Holy Bull*, 613 F.3d 871, 873 (8th Cir. 2010) (assaults were sufficiently similar where both involved genital fondling of defendant's step-daughters).[3]

### 2.    Rule 413(b)

Defendant's second argument is that the district court should not have admitted evidence of J.G.'s abuse because the government did not provide notice that it intended to offer this evidence fifteen days before the start of trial as required by Rule 413(b). In order to clarify the import of this argument, we will briefly summarize the sequence of events leading up to trial.

On July 22, 2015, the government filed its first superseding indictment, which added a charge for sexual abuse under 18 U.S.C. §§ 2242(2), 1151 and 1153 (Count 6) against Defendant for abusing J.G. It is undisputed that the substance of J.G.'s abuse allegations was disclosed to Defendant on July 31, 2015—almost a year prior to trial.[4] Count 6 was retained in the government's second superseding indictment, filed on March 10, 2016. Later, as the

---

[3]Moreover, it does not matter that Defendant's assaults of J.G. and E.B. occurred several years prior to the assault of B.J., because the assaults were factually similar, and the victims were similar ages when the assaults occurred. *See LaVictor*, 848 F.3d at 450 (collecting cases for the proposition that factually similar sexual assaults are admissible under Rule 413 even though the assaults occurred more than twenty years apart).

[4]Defendant was not permitted to review J.G.'s written statement regarding her abuse, or a video recording of J.G.'s interview with law enforcement personnel, until six days prior to trial. However, the government represented to the district court that the recording's existence was disclosed to Defendant well in advance of trial, and Defendant does not dispute that representation. Moreover, Defendant concedes that he was provided with a transcript of J.G.'s grand jury testimony, which disclosed the substance of her allegations, in July of 2015. Defendant does not argue that J.G. testified to any new material facts at trial that were not reflected in her grand jury testimony. Nor does Defendant contend that the written statement or the video contained exculpatory evidence, or that he was otherwise prejudiced by their disclosure so close to trial.

government was preparing for trial, it learned that Defendant's abuse of J.G. occurred outside of the Isabella Reservation,[5] and thus there was no basis for federal subject matter jurisdiction over Count 6. Accordingly, on June 16, 2016—six days before trial—the government moved to dismiss Count 6, and simultaneously announced its intent to offer J.G.'s testimony as Rule 413 evidence. The district court admitted the evidence, and Defendant now argues that this decision was an abuse of discretion because Rule 413(b) requires that past sexual assault evidence be disclosed to the defendant at least fifteen days prior to trial. *See* Fed. R. Evid. 413(b) ("If the prosecutor intends to offer [prior sexual assault] evidence, the prosecutor must disclose it to the defendant, including witnesses' statements or a summary of the expected testimony . . . at least 15 days before trial or at a later time that the court allows for good cause.").

We reject Defendant's argument, because he received all of the notice that Rule 413(b) requires. We have little case law interpreting Rule 413(b), but the Tenth Circuit has explained that the Rule's "notice period protects against surprise and allows the defendant to investigate and prepare cross-examination. It permits the defendant to counter *uncharged* crimes evidence with rebuttal evidence and full assistance of counsel." *United States v. Enjady*, 134 F.3d 1427, 1433 (10th Cir. 1998) (emphasis added). This purpose would not be served by reversing Defendant's convictions. In this case, Defendant knew that the prosecution intended to put on evidence of J.G.'s abuse for a full year prior to trial, because Defendant was formally charged with abusing J.G. in Count 6 of the first and second superseding indictments. It was only six days prior to trial that defense counsel learned that Count 6 would be dropped for want of federal jurisdiction; by then, defense counsel surely had sufficient time to investigate J.G.'s allegations and prepare a defense. We decline to elevate form over function by reversing Defendant's convictions just because the government did not announce its intent to offer J.G.'s testimony under Rule 413 at least fifteen days prior to trial, because there is no possibility that Defendant was unfairly surprised by the evidence. *See United States v. Benais*, 460 F.3d 1059, 1062 (8th Cir. 2006) (holding that Rule 413(b) only "requires disclosure of the evidence itself" fifteen days prior to trial, and the Rule does not "impose[] on the Government a separate obligation to specifically disclose or declare the intention to rely upon Rule 413 for admissibility").

---

[5]The Assistant United States Attorney prosecuting this case apparently misunderstood J.G.'s answers to his questions about where and when the abuse had occurred, which led to the error in charging Count 6.

Additionally, Rule 413(b) permits a district court to excuse an untimely disclosure for good cause. As the government points out, the district court found that any violation of the fifteen-day rule was "excusable" because Rule 413 only became relevant upon the dismissal of Count 6, and the government gave notice of its intent to rely on Rule 413 in conjunction with its request to voluntarily dismiss that count. Defendant does not address this point at all, and we find no basis to conclude that the district court abused its discretion in this regard. *See United States v. Guidry*, 456 F.3d 493, 504 (5th Cir. 2006) (holding that the "Government had good cause for not providing pretrial notice" because it "did not learn of [the victim's] testimony until after the trial had already started").

Accordingly, we reject Defendant's contention that the district court violated Rule 413(b) by admitting J.G.'s testimony.

### 3. Rule 403

Finally, Defendant argues that J.G.'s testimony was inadmissible under Federal Rule of Evidence 403 because it was unfairly inflammatory and might have led the jury to convict Defendant on an improper basis. We reject this argument as well. Although J.G.'s testimony was certainly prejudicial, Defendant has identified no reason why the testimony was *unfairly* prejudicial. After all, J.G. testified to essentially the same (admittedly outrageous) abuse that E.B. and B.J. testified to as part of the government's case in chief, and so her testimony did not alter the tone and tenor of the trial. As we have recently explained:

> We recognize that Rule 413 evidence can be inherently prejudicial. By describing violent and sexual conduct, the evidence may have a strong propensity to evoke a visceral reaction from a lay jury. [Nevertheless], Congress's decision to codify Rule 413 reflects its belief of the probative nature of such testimony. As this Court explained in *United States v. Stout*, 509 F.3d 796, 801–02 (6th Cir. 2007), the codification of Rule[s] 413, 414, and 415 represent[s] an understanding that sexual assault is different from regular prior bad acts. This difference is either that "propensity evidence has special value in certain violent sexual misconduct cases or that the difficulty of and need for convictions for these crimes warrants a decrease in the usual protections against propensity and character evidence." *Id.*

*LaVictor*, 848 F.3d at 450.  Because Defendant does not offer any reason why the Rule 413 evidence in this case was any more unfairly prejudicial than child molestation evidence typically is, we reject Defendant's Rule 403 challenge as well.

## II.      Rule 404(b) Challenge

### A.      Standard of Review

Federal Rule of Evidence 404(b) provides as follows:

> **(1) Prohibited Uses.**  Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> **(2) Permitted Uses; Notice in a Criminal Case.**  This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. On request by a defendant in a criminal case, the prosecutor must:
>
> > **(A)** provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and
> >
> > **(B)** do so before trial--or during trial if the court, for good cause, excuses lack of pretrial notice.

Some panels of this Court have argued that there is an intra-circuit split regarding the correct standard of review for a district court's decision to admit Rule 404(b) evidence.  As the alleged split is typically described, one line of cases holds that the Supreme Court's decision in *General Electric Co. v. Joiner*, 522 U.S. 136, 141 (1997), mandates that Rule 404(b) decisions be reviewed for abuse of discretion, *see, e.g.*, *United States v. Mack*, 258 F.3d 548, 553 n.1 (6th Cir. 2001); *United States v. Haywood*, 280 F.3d 715, 720 (6th Cir. 2002); *United States v. Allen*, 619 F.3d 518, 524 n.2 (6th Cir. 2010), while another line of cases holds that we should use the following three-step process in reviewing a district court's decision to admit Rule 404(b) evidence:

> First, we review for clear error whether there is a sufficient factual basis for the occurrence of the "bad act" that is being proffered as evidence (and challenged pursuant to 404(b)). *United States v. Murphy*, 241 F.3d 447, 450 (6th Cir. 2001). Second, we determine *de novo* whether the evidence was proffered for an admissible purpose. *Id.* Third, we review for an abuse of discretion whether the

probative value of the proffered evidence is substantially outweighed by any undue prejudice that will result from its admittance. *Id.*

*United States v. Gibbs*, 797 F.3d 416, 422 (6th Cir. 2015); *see also United States v. Barnes*, 822 F.3d 914, 921 (6th Cir. 2016); *United States v. Clay*, 667 F.3d 689, 693 (6th Cir. 2012).

The government urges us to review for abuse of discretion, and Defendant does not contest this premise. However, as we have previously explained, the abuse of discretion and tripartite standards of review "are not in fact inconsistent, because it is an abuse of discretion to make errors of law or clear errors of factual determination." *United States v. Bell*, 516 F.3d 432, 440 (6th Cir. 2008) (quoting *United States v. Gainer*, 468 F.3d 920, 925 (6th Cir. 2006)). The tripartite framework is merely a recognition that we are faced with three distinct questions when reviewing the admission of Rule 404(b) evidence: (i) the factual question of whether the prior bad acts occurred; (ii) the legal question of whether the evidence was offered for an admissible purpose; (iii) and the discretionary question of whether the district court permissibly applied the Rule 403 balancing test. *See Gibbs*, 797 F.3d at 422. No matter which formulation we employ, reversal is only proper if the district court committed a legal error by admitting the prior acts evidence for an impermissible purpose, relied on clearly erroneous facts in finding that the prior acts occurred, or abused its discretion in weighing the evidence's probative and prejudicial value under Rule 403's balancing test. *Bell*, 516 F.3d at 440.

## B. Analysis

At trial, the district court permitted the prosecution to put on evidence that Defendant physically abused Darcy on several occasions in front of B.J. and E.B. Defendant argues that this was an abuse of discretion because: (i) the evidence was not offered for a permissible purpose under Rule 404(b)(2); and (ii) the evidence's probative value was substantially outweighed by its potential for unfair prejudice under the Rule 403 balancing test. We reject these arguments as well.

### 1. Permissible Purpose

First, Defendant argues that the government offered testimony that Defendant abused Darcy in front of his victims in order to show that Defendant acted in accordance with his

disposition towards violent criminal behavior, in violation of Rule 404(b)'s ban on propensity evidence. The government argues that the evidence was offered for a valid purpose—to explain why the victims did not report the abuse to the authorities, and thus counter any implication that the allegations were fabricated. We agree with the government.

As stated earlier, none of the three abuse victims in this case reported their abuse to the authorities, members of the community, or even to their parents while the abuse was ongoing. Moreover, the victims did not come forward until they were all well into adulthood—B.J. was twenty-four years old at time of trial, J.G. was thirty-seven, and E.B. was thirty-one. It would be natural for a jury to wonder why the victims waited so long to come forward, and on that basis, to suspect that they were not being truthful in their allegations against Defendant. To counter this implication, the government introduced evidence that Defendant physically abused Darcy in front of the victims in order to show why the victims would have been afraid to come forward and accuse Defendant of abuse. To wit, B.J. testified that she became afraid after witnessing Defendant assault her mother, and E.B. testified that she was fearful for her own safety and never reported her sexual abuse because she was scared that Defendant would retaliate against her. This testimony was proper under the circumstances presented here because it explained the victims' counter-intuitive behavior (tolerating rather than reporting their abuse), and did not attempt to imply that Defendant must have been guilty of the conduct charged in the indictment because he abused his wife.

Our holding is consistent with how state and federal courts have treated similar evidence in sexual abuse cases. As the government points out, courts have repeatedly held that a defendant's prior bad acts are admissible under Rule 404(b) (and its state-law analogs) to explain why a victim submitted to a sexual assault or delayed in reporting the assault to the police. *See, e.g., United States v. Plumman*, 409 F.3d 919, 928 (8th Cir. 2005) (affirming decision to admit 404(b) evidence where the "physical assault evidence . . . provide[d] a reason why [the victim] did not contact law enforcement"); *United States v. Powers*, 59 F.3d 1460, 1464 (4th Cir. 1995) (affirming decision to admit 404(b) evidence where "[e]vidence of the beatings of both [the victim] and her family provide[d] a cogent explanation for [the victim's] failure to report the sexual abuse for almost eighteen months" and made "it more probable that [the victim] failed to

report the sexual abuse not because it never took place, but because of her fear of retribution"); *United States v. Escarsega*, 182 F. App'x 595, 598 (8th Cir. 2006) (affirming decision to admit 404(b) evidence where the "evidence of [the defendant's] other assaults was relevant to how . . . [the victim] feared bodily injury if she refused sexual intercourse"); *Commonwealth v. Dillon*, 925 A.2d 131, 139 (Pa. 2007) ("[T]here is no doubt that evidence of [the defendant's] abuse of [the victim's] mother and brother was relevant for purposes other than to show his bad character and criminal propensity . . . . [T]he evidence was probative of the reasons for [the victim's] significant delay in reporting the alleged sexual assaults—*i.e.*, the evidence tends to show that her experience with [the defendant], including those assaults on family members, caused her to fear making a prompt report."); *People v. Chase*, 277 A.D.2d 1045 (N.Y. App. Div. 2000) (affirming admission of evidence "that defendant engaged in acts or threats of violence against the victim or against other persons in the presence of the victim, and thus was directly relevant to . . . explain the victim's failure to make a prompt complaint"); *People v. Brown*, 883 P.2d 949, 958–59 (Cal. 1994); *Commonwealth v. McKinnon*, 620 N.E.2d 792, 796 (Mass. Ct. App. 1993) (affirming admission of testimony that defendant abused victim's mother in explaining victim's delay in reporting sexual abuse); *State v. Bates*, 784 P.2d 1126, 1127–28 (Utah 1989) (same).

We find the logic of these cases compelling. As the California Supreme Court has persuasively explained in one representative case:

> [W]hen the victim of an alleged sexual offense did not make a prompt complaint but instead disclosed the alleged incident only some time later, evidence of the fact and circumstances surrounding the delayed complaint also may be relevant to the jury's evaluation of the likelihood that the offense did or did not occur. In the absence of evidence of the circumstances under which the victim ultimately reported the commission of an alleged offense, the jury in many instances may be left with an incomplete or inaccurate view of all the pertinent facts. *Admission of evidence of the circumstances surrounding a delayed complaint, including those that might shed light upon the reason for the delay, will reduce the risk that the jury, perhaps influenced by outmoded myths regarding the "usual" or "natural" response of victims of sexual offenses, will arrive at an erroneous conclusion with regard to whether the offense occurred.* Particularly in a case such as the present one, in which the victim testifies to a series of alleged sexual offenses over a considerable period of time, during which the victim had the opportunity to disclose the alleged offenses to others but failed to do so, the exclusion of all evidence relating to the context in which the victim ultimately disclosed the alleged offenses to others is likely to leave the jury with an incomplete or

erroneous understanding of the victim's behavior. So long as the evidence that is admitted is carefully limited to the fact that a complaint was made, and to the circumstances surrounding the making of the complaint, thereby eliminating or at least minimizing the risk that the jury will rely upon the evidence for an impermissible hearsay purpose, admission of such relevant evidence should assist in enlightening the jury without improperly prejudicing the defendant.

*Brown*, 883 P.2d at 958–59 (emphasis added, citations omitted).

Accordingly, we hold that the government may, subject to Rule 403's balancing test, introduce evidence of a defendant's prior violent acts without violating Rule 404(b) when the evidence is offered to show why the defendant's victims submitted to the defendant's abuse, or failed to report the abuse in a timely manner.[6] Applying this principle here, the district court did not commit a legal error in admitting testimony that Defendant abused Darcy in front of E.B. and B.J. E.B.'s testimony that she did not report Defendant's abuse because she feared that Defendant would hurt her in the same way that he hurt Darcy if she did so is a sufficient foundation to show that the spousal abuse evidence was offered for a proper purpose.

## 2. Rule 403

Finally, Defendant offers a cursory argument the spousal abuse testimony was inadmissible under the Rule 403 balancing test. Once again, Defendant fails to explain why this evidence was *unfairly* prejudicial. The testimony relating to Defendant's abuse of Darcy was not extensive, graphic, or detailed, and we find it unlikely that the testimony could have inflamed the jurors' passions and motivated them to convict on an improper basis, particularly since the child sexual abuse evidence that the government presented during its case in chief had far greater inflammatory potential than the spousal abuse evidence. But even if the evidence was unfairly prejudicial, the district court issued a thorough cautionary instruction to the jury designed to prevent the jury from using this evidence improperly:

---

[6]Of course, evidence of a defendant's prior violent acts is only relevant to explain a victim's inaction if the victim witnessed or was aware of these acts. Otherwise, the prior violent acts cannot be said to have influenced the victim's behavior. In similar vein, the government must put forward some evidence suggesting that the defendant's prior violent acts influenced the victims' decision not to report the defendant's crimes. For example, if a victim testifies that she was not afraid of retaliation by the defendant in spite of witnessing his violence towards third persons, it would be error to admit the violent acts as Rule 404(b) evidence absent an independent evidentiary basis to admit that evidence. In this case, E.B.'s testimony that she feared retaliation by Defendant after witnessing his violence against Darcy was a sufficient foundation to admit the spousal abuse testimony under Rule 404(b).

> Remember that Defendant is only on trial here for the crimes charged in the second superseding indictment, and not any alleged domestic violence. You have heard testimony that Defendant allegedly committed acts of domestic violence against [Darcy]. If you find that Defendant did those acts, you can consider the evidence only as it relates to the government's claim that it explains why [B.J.] and/or [E.B.] did not resist Defendant, call for help during the incidents, or report the crimes committed against them to the police. You must not consider it for any other purpose. Do not return a guilty verdict unless the government proves the elements of the crimes charged in the second superseding indictment beyond a reasonable doubt.

(R. 51, Jury Instructions, PageID #198.) If there was any prejudice from admitting the spousal abuse testimony, this instruction was sufficient to cure it for Rule 403 purposes. *See Plumman*, 409 F.3d at 928–29 (affirming decision to admit evidence that the defendant committed prior assaults to show why sexual assault victim delayed in reporting the abuse where "the district court mitigated any undue prejudice by admitting the evidence for the limited purpose of showing [that the victims] were afraid [of the defendant], and by giving the jury a proper limiting instruction").

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's judgment.