RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0253p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

No. 24-1341

*v.*

TIMOTHY LEE BAKER,

*Defendant-Appellant*.

─────────────

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:23-cr-00091-1—Paul Lewis Maloney, District Judge.

Argued: June 12, 2025

Decided and Filed: September 12, 2025

Before: GRIFFIN, LARSEN, and MATHIS, Circuit Judges.

─────────────

## COUNSEL

─────────────

**ARGUED:** Steven D. Jaeger, HEMMER WESSELS MCMURTRY PLLC, Ft. Mitchell, Kentucky, for Appellant. John J. Schoettle, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Steven D. Jaeger, HEMMER WESSELS MCMURTRY PLLC, Ft. Mitchell, Kentucky, for Appellant. Austin J. Hakes, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee.

─────────────

## OPINION

─────────────

MATHIS, Circuit Judge. Timothy Baker dated Shaelyn Fann, but he also expressed sexual interest in Fann's eleven-year-old daughter, S.H. At the time, Baker was a registered sex offender. Baker and Fann groomed S.H. for sexual activity, and Fann sent Baker several

sexually explicit photographs of S.H.  Law enforcement learned about Baker's illegal activities involving S.H. while investigating him for sexually assaulting another minor.  A jury convicted Baker of: (1) conspiracy to sexually exploit a minor, (2) coercion and enticement of a minor, and (3) committing the first two offenses while being required to register as a sex offender.

Baker raises three challenges on appeal.  First, Baker argues that the district court erred in finding that he had two prior convictions for sexually exploiting minors.  The district court's finding increased Baker's minimum statutory sentence for conspiracy to sexually exploit a minor from 15 years to 35 years in prison.  Second, Baker argues that the district court violated his double-jeopardy rights.  Third, Baker argues that the district court erred by allowing two minors to testify that he had sexually assaulted them.  Discerning no error, we affirm.

**I.**

**A.**

From at least June 2022 through January 2023, Timothy Baker was in a relationship with Shaelyn Fann, but he also expressed sexual interest in Fann's eleven-year-old daughter, S.H. During their relationship, Fann took several sexually explicit photographs of S.H., which she sent to Baker at his request.  Baker and Fann also groomed S.H. for sexual activity, as Baker planned to sexually abuse S.H. with Fann's help.

Baker repeatedly requested sexually explicit photographs of S.H.  Baker specified what he wanted the pictures to show, and he taught Fann how to record S.H. without her knowledge. For instance, Baker encouraged Fann to give S.H. a sleeping pill and advised that the best way to do so was to "[c]rush it up into a fine powder," put it in "Gatorade" or "[a]nything flavored, non-carbonated," and "[g]ive it to her at about 7:30 p.m., [so] she w[ould] pass out with her clothes on and [Fann] c[ould] change her into PJs.  Full access."  R. 133, PageID 1000.

As Fann sent Baker photos of S.H., he praised Fann, urged her to continue her efforts, and made more elaborate requests.  For instance, he paid Fann to buy S.H. "tiny little shorts" and then requested "pics of [Fann] having [S.H.] try them on."  *Id.* at 1005.  Baker received several nude and semi-nude photographs of S.H. that included exhibition of S.H.'s unclothed pubic area.

Baker and Fann strategized to groom S.H. for sexual abuse. Baker told Fann "to instill loyalty [in S.H.] and being a secret keeper," and he emphasized that S.H. "need[ed] the right persuasion." *Id.* at 957. Baker encouraged Fann to give S.H. a sex toy, which Fann did, and she sent Baker a photograph of S.H. posing with it. Baker also met S.H. at the mall and gave her a shirt as a gift, and a hug. Fann later followed up with the news that "S.H. ha[d] more trust in [Baker] and want[ed] to hang out again." *Id.* at 1036.

Ultimately, Baker planned to sexually abuse S.H. He described to Fann that when S.H. was unconscious, "I will just lick and fingers when she's out, maybe just the tip, and finish on a towel." *Id.* at 973–74. He asked Fann, "Are you really going to let me play with S.H.?" *Id.* at 988. And Fann assured him, "As long as you can make sure we don't get caught. . . . Just don't wake her up," to which Baker replied, "That is the goal." *Id.* at 989. Baker assured Fann that his plan would succeed "[a]s long as [Fann] [had an] explanation [for] why her parts may be sore" and "d[id]n't let her go to a doctor." *Id.* at 989–90.

**B.**

A grand jury indicted Baker for: (1) conspiracy to sexually exploit a minor, in violation of 18 U.S.C. § 2251(a) and (e) (Count 1); (2) coercion and enticement of a minor, in violation of 18 U.S.C. § 2422(b) (Count 2); and (3) committing the offenses described in Counts 1 and 2 while being required to register as a sex offender, in violation of 18 U.S.C. § 2260A (Count 3). The grand jury also charged that, at the time of the offenses, Baker had two prior convictions relating to the sexual exploitation of minors. Under § 2251(e), a defendant convicted of violating § 2251(a) faces an enhanced sentence if he has one or more prior convictions for sexually exploiting minors. Those two convictions were for criminal sexual conduct, in violation of Michigan law. Baker had sexually abused his younger stepsister and his younger half-brother when they were twelve and thirteen years old, respectively, and Baker was fifteen or sixteen. Baker pleaded guilty to those charges in 1997. He also stipulated that he was required to register as a sex offender at all times relevant to the current federal charges.

Before trial, Baker filed several motions pertinent to this appeal. He moved to strike the enhanced sentencing provision of Count 1 that was triggered by his 1997 convictions. Baker

argued that the prior offenses, which occurred when he was a minor, resulted in juvenile adjudications rather than convictions. So he argued that they could not be used to enhance his sentence under § 2251(e), which requires a prior sex offense to result in a conviction. The district court denied Baker's motion.

Baker also moved to sever Count 3 from the superseding indictment. He argued that imposing a sentence under both § 2251(e) and § 2260A violated his double-jeopardy rights. The district court denied that motion as well.

After the government notified Baker that it intended to introduce evidence that he sexually assaulted two other minors (L.H. and I.B.) to prove his intent to commit the alleged offenses, Baker moved in limine to exclude this evidence at trial. And the government moved in limine to admit the evidence under Rules 404, 413, and 414 of the Federal Rules of Evidence. The district court ruled in the government's favor, reasoning that "the closeness of time between the acts as it relate[d] to [L.H.] and [I.B.] and the similarities between the alleged criminal acts and the prior acts [were] particularly probative." R. 135, PageID 1207.

At trial, an FBI special agent who investigated Baker testified about the electronic communications between Baker and Fann regarding their conspiracy to sexually exploit S.H. and Baker's attempt to coerce and entice S.H. to engage in sexual activity. The government presented several sexually explicit photographs that Fann had taken of S.H. and sent to Baker, and S.H.'s grandmother identified S.H. in the photographs.

Throughout trial, Baker argued that his communications with Fann were "fantasies" and that his plans were mere talk. R. 133, PageID 1104. To counter this argument, the government called two minor witnesses, L.H. and I.B., who testified—pursuant to Federal Rule of Evidence 413, and over Baker's objection—that Baker had sexually assaulted them.

L.H. testified that when she was fifteen years old, she was friends with two of Baker's stepchildren. She grew close with Baker while spending time with her friends and described him as "a father figure." R. 132, PageID 844. Baker bought her gifts: "a blanket with polar bears on it. And . . . [a] tank top outfit with short shorts." *Id.* at 845. In December 2022, L.H. asked Baker to buy her alcohol and drive her to her friend's house. Baker picked her up with alcohol in

tow, but then he brought her to his trailer home where they drank and started watching a movie. L.H. soon became drunk and stumbled and hit her head after using the bathroom. Baker "lifted [L.H.] on to the bed" next to him, slid down her pants, began touching her vagina, and told her "not to tell anyone," before she passed out. *Id.* at 851, 854.

I.B. met Baker when she was around nine years old. Like L.H., Baker was a father figure in I.B.'s life, as he was in a relationship with I.B.'s mother. I.B. described an escalating series of uncomfortable events with Baker. First, Baker insisted that I.B. give him a "bear hug," during which she had to sit on his lap. Then, when she and Baker were home alone, Baker told I.B. to clean her room. When Baker inspected the room, he sat down next to I.B. on her bed and grabbed her "mid thigh." *Id.* at 877. On a later occasion, Baker again told I.B. to clean her room when they were alone. This time, when he inspected the room, he "grabbed [I.B.'s] shoulders and kind of laid [her] down on [her] bed," and then he touched her vagina underneath her clothing. *Id.* at 879. When Baker heard I.B.'s mother returning home, he told I.B. "not to tell [her] mom." *Id.* at 880.

The jury convicted Baker on all three counts. The district court imposed concurrent 480-month sentences for Counts 1 and 2, (420 months was the statutory minimum sentence Baker could receive for Count 1), and a 120-month consecutive sentence for Count 3, for a total effective sentence of 600 months' imprisonment. Baker timely appealed.

**II.**

On appeal, Baker argues that: (1) the district court erred in denying his motion to strike the § 2251(e) sentencing enhancement from Count 1 based on his 1997 criminal-sexual-conduct offenses; (2) the combined enhancements of § 2251(e) and § 2260A violate his double-jeopardy rights; and (3) the district court erred by admitting the propensity evidence from L.H. and I.B. alleging prior sexual assaults. We address each argument in turn.

**A.**

Count 1 charged Baker with conspiring with Fann to sexually exploit S.H., a minor, in violation of 18 U.S.C. § 2251(a). A conviction for this offense generally has a statutory

sentencing range of 15 to 30 years of imprisonment.  18 U.S.C. § 2251(e).  But the statute imposes enhanced penalties if a defendant has certain prior convictions.  Relevant here, an offender's statutory range of punishment increases to a minimum of 35 years' imprisonment and a maximum of life imprisonment if he has "2 or more prior convictions under . . . the laws of any State relating to the sexual exploitation of children."  *Id.*

In 1997, Baker was found responsible for committing two criminal-sexual-conduct offenses under Michigan law.  But he claims the resolution of those offenses resulted in juvenile adjudications, not convictions.  So he argues that the district court erred in denying his motion to strike the sentencing enhancement provision related to Count 1.  This raises a question of statutory interpretation—whether Baker has at least two prior sexual-exploitation-of-children "convictions"—that we review de novo.  *See United States v. Lawrence*, 735 F.3d 385, 405 (6th Cir. 2013).

As an initial matter, the parties dispute whether we should look to federal law or state law to define "conviction."  The government says we look to federal law.  Baker says we look to Michigan law.  The government has the better argument.

Whether a defendant has received a prior conviction for an offense "is necessarily . . . a question of federal, not state, law, despite the fact that the [prior] offense and its punishment are defined by the law of the State."  *Dickerson v. New Banner Inst., Inc.*, 460 U.S. 103, 111–12 (1983), *superseded by statute on other grounds as stated in Logan v. United States*, 552 U.S. 23, 27 (2007); *see also United States v. Pritchett*, 749 F.3d 417, 424 (6th Cir. 2014).  "This makes for desirable national uniformity unaffected by varying state laws, procedures, and definitions of 'conviction.'"  *Dickerson*, 460 U.S. at 112.  Nothing in § 2251(e) indicates that Congress intended state law to define "conviction" rather than federal law.  Instead, § 2251(e)'s language that a defendant must have "prior convictions under . . . the laws of any State" tells us that we should "analyze the *subject* of the state law, not . . . the prior judgment under state law."  *United States v. Neuhard*, 770 F. App'x 251, 258 (6th Cir. 2019).

So what does "conviction" mean?  Section 2251 does not define the term.  Nor does Chapter 110 of the federal criminal code, under which § 2251 falls.  *See* 18 U.S.C. § 2256.  We

thus presumptively give "conviction" its ordinary meaning. *See EPA v. Calumet Shreveport Refin., L.L.C.*, 145 S. Ct. 1735, 1747 (2025). "In determining that meaning, dictionaries are a good place to start." *United States v. Zabawa*, 719 F.3d 555, 559 (6th Cir. 2013). Around the time of § 2251's enactment, Black's Law Dictionary defined "conviction" as "the final judgment on a verdict or finding of guilty, a plea of guilty, or a plea of nolo contendere." (5th ed. 1979); *see also* Webster's Third International Dictionary (1986) (defining "conviction" as "the act of proving, finding, or adjudging a person guilty of an offense or crime").

The Supreme Court's guidance provides further instructions. The Court has explained that the definition of "conviction" should "be drawn from the context in which it is used." *Deal v. United States*, 508 U.S. 129, 132 (1993), *superseded by statute on other grounds as stated in Hewitt v. United States*, 145 S. Ct. 2165, 2169 (2025). And in some circumstances, "a guilty plea alone [is] enough to constitute a 'conviction.'" *Dickerson*, 460 U.S. at 112.

Baker's two prior offenses for criminal sexual conduct, in violation of Michigan Compiled Laws § 750.520c, led to convictions. Although Baker was a juvenile when charged with the criminal-sexual-conduct offenses, he pleaded guilty, and the judge entered a "Judgment of Conviction," which states that "the case was designated by the prosecutor for trial of the juvenile in the same manner as an adult." R. 58-1, PageID 244 (citation modified). The judgment also reflected that Baker "[was] convicted of the crimes stated" in the judgment. *Id.* Nothing in the judgment of conviction or the judgment of sentence suggests that Baker received a juvenile adjudication. The state records instead reflect that Baker was *convicted* of criminal sexual conduct rather than adjudicated responsible. *See Pritchett*, 749 F.3d at 424–26. Baker does not dispute that his criminal-sexual-conduct offenses related to "the sexual exploitation of children." *See* 18 U.S.C. § 2251(e). The district court thus did not err in denying Baker's motion to strike the § 2251(e) sentencing enhancement.

Baker responds that he did not receive "convictions" for criminal sexual conduct because his case underwent a "blended" sentencing procedure. *See* Mich. Comp. Laws § 712A.18(1)(o). Thus, he contends his offenses were originally juvenile adjudications, not convictions, and should not trigger the § 2251(e) enhancement. This argument fails because it is based on state law, not federal law. But Baker's argument also fails under Michigan law.

When Michigan juveniles are found responsible for committing criminal acts, their cases typically result in juvenile "adjudications," *see id.* § 712A.18e(1), but they can also result in criminal convictions, *id.* § 712A.2d(7).  To obtain a criminal conviction, "the prosecuting attorney may designate the case as a case in which the juvenile is to be tried in the same manner as an adult." *Id.* § 712A.2d(1).  When a prosecutor so designates a case, "[a] plea of guilty or nolo contendere or a verdict of guilty must result in entry of a judgment of conviction." *Id.* § 712A.2d(7).  Following a judgment of conviction, the judge has "the option of imposing either a juvenile disposition, an adult sentence, or a blended sentence, i.e., a delayed sentence pending defendant's performance under the terms provided by a juvenile disposition." *People v. Petty*, 665 N.W.2d 443, 446–47 (Mich. 2003).  A judge may not later set aside a conviction that results from this process, nor may those who have been convicted even apply for such relief.  Mich. Comp. Laws § 712A.18e(2).  By contrast, juvenile adjudications may later be set aside by application for and entry of a judicial order.  *Id.* § 712A.18e(1).

The state court carried out a blended, delayed, sentencing procedure in Baker's case.  Upon the judgment of conviction, the state court set Baker's sentencing for December 1997.  It then delayed Baker's sentencing and remanded him to a treatment facility, stating that the "[b]est interests of the public would be served by sentencing [Baker] as an adult."  R. 58-1, PageID 245.  In 2000, once Baker was an adult, the state court sentenced Baker "as an adult" to concurrent terms of 120 to 180 months of imprisonment on each of his convictions and remanded him to the "custody of [the] Michigan Department of Corrections."  *Id.* at 246.  "[T]he issuance of a blended, or delayed, sentence does not alter the fact that [a] defendant received a *conviction*, and not an *adjudication*." *People v. Brewer*, Nos. 360776/360777, 2023 WL 1870429, at *2 (Mich. Ct. App. Feb. 9, 2023) (per curiam).  "The clear import of [Mich. Comp. Laws §] 712A.2d is that a juvenile tried as an adult receives a *conviction*.  In contrast, juveniles who proceed as juveniles are *adjudicated responsible*." *People v. Armstrong*, 851 N.W.2d 856, 865 (Mich. Ct. App. 2014) (per curiam).  So even under Michigan law, Baker received "convictions" for his two criminal-sexual-conduct offenses.

**B.**

As mentioned above, the district court had to impose, at minimum, a 35-year sentence for Baker's conviction for conspiracy to sexually exploit a minor, in violation of § 2251, after Baker's two prior sexual-exploitation convictions. Because the jury found Baker guilty of being a registered sex offender when he committed the § 2251 offense and the offense involved a minor, the district court also had to impose "a term of imprisonment of 10 years in addition to the imprisonment imposed for the offense under [§2251]." 18 U.S.C. § 2260A. Baker argues that imposing a sentence under § 2251(e) and a consecutive 10-year sentence under § 2260A violated his double-jeopardy rights. We review double-jeopardy claims de novo. *See United States v. Robinson*, 99 F.4th 344, 360 (6th Cir. 2024).

"The Double Jeopardy Clause provides that '[n]o person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb.'" *McElrath v. Georgia*, 601 U.S. 87, 93 (2024) (alterations in original) (quoting U.S. Const. amend. V). The Clause "protects not only against a second trial for the same offense, but also against multiple punishments for the same offense." *Whalen v. United States*, 445 U.S. 684, 688 (1980) (citation modified). In the multiple-punishments context, "the purpose is to ensure that sentencing courts do not exceed, by the device of multiple punishments, the limits prescribed by the legislative branch of government, in which lies the substantive power to define crimes and prescribe punishments." *Jones v. Thomas*, 491 U.S. 376, 381 (1989) (citation modified). Relevant here, "where consecutive sentences are imposed at a single criminal trial, the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense." *Brown v. Ohio*, 432 U.S. 161, 165 (1977) (citation modified). But "where Congress intended . . . to impose multiple punishments, imposition of such sentences does not violate the Constitution." *Albernaz v. United States*, 450 U.S. 333, 344 (1981) (citation modified); *see also Broom v. Shoop*, 963 F.3d 500, 514 (6th Cir. 2020).

We therefore examine Congress's intent regarding the relevant statutes: 18 U.S.C. §§ 2251(e) and 2260A. To determine congressional intent, we start by focusing on the language Congress used. *Hewitt*, 145 S. Ct. at 2171. This is the only step in "the interpretative inquiry" if

the statutory language is unambiguous.  *Rotkiske v. Klemm*, 589 U.S. 8, 13 (2019).  In completing this statutory-interpretation task, we consider "the design of the statute as a whole." *Maracich v. Spears*, 570 U.S. 48, 76 (2013) (quotation omitted).

Did Congress intend to impose cumulative punishments for convictions under §§ 2251 and 2260A?  The plain language of § 2260A answers this question in the affirmative: "The sentence imposed under this section shall be consecutive to any sentence imposed for the offense under that provision."  Section 2260A lists § 2251 as a predicate offense that will lead to another ten years of imprisonment for a defendant who commits a felony offense involving a minor after "being required . . . to register as a sex offender."  18 U.S.C. § 2260A.

A brief review of the statutory history of §§ 2251 and 2260A buttresses this conclusion. Congress originally enacted § 2251's sentencing enhancement for persons with prior convictions involving sexual exploitation of children in 1978.  *See* Protection of Children Against Sexual Exploitation Act of 1977, Pub. L. No. 95-225, § 2(a), 92 Stat. 7 (1978).  Congress amended § 2251 several times, including in the same legislation that codified § 2260A, the Adam Walsh Child Protection and Safety Act of 2006.  *See* Pub. L. No. 109-248, tit. II, § 206(b)(1), 120 Stat. 587 (2006).  "We presume that Congress is aware of existing law when it passes legislation." *Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 169 (2014) (citation modified).

Congress enacted § 2260A knowing that § 2251 already included a penalty enhancement for individuals with prior convictions for sexually exploiting minors.  This shows that Congress intended to impose cumulative punishment on persons already subject to the § 2251(e) enhancement when it passed § 2260A.

Baker argues that we should resolve his double-jeopardy claim by applying the test set out in *Blockburger v. United States*, 284 U.S. 299 (1932).  Under *Blockburger*, "[t]he applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."  *Id.* at 304.  "The *Blockburger* test," however, "is a rule of statutory construction, and because it serves as a means

of discerning congressional purpose the rule should not be controlling where, for example, there is a clear indication of contrary legislative intent." *Albernaz*, 450 U.S. at 340 (citation modified).

We have held that the Constitution does not "require . . . courts to apply *Blockburger* to resolve [a] double jeopardy claim." *Jackson v. Smith*, 745 F.3d 206, 211 (6th Cir. 2014). Instead, "what determines whether the constitutional prohibition against multiple punishments has been violated is the . . . legislature's intent concerning punishment." *Id*. (citation modified). "Legislative intent is the touchstone; it, and not the *Blockburger* test, determines whether two offenses are the same and, if so, whether multiple punishments are nevertheless intended." *Id*. at 211–12 (citing *Albernaz*, 450 U.S. at 344); *see also Missouri v. Hunter*, 459 U.S. 359, 368–69 (1983) (holding that where the intention of Congress is clear, the Double Jeopardy Clause does not preclude cumulative punishments even if two criminal statutes proscribe the same conduct under the *Blockburger* test). Congress's intent is clear, so Baker's *Blockburger* argument fails.

## C.

Baker argues that the district court erred in denying his motion to exclude propensity evidence of prior alleged sexual assaults based on the testimony of L.H. and I.B. We review the district court's evidentiary rulings for an abuse of discretion. *United States v. Blanchard*, 618 F.3d 562, 569 (6th Cir. 2010).

Federal Rule of Evidence 413 provides: "In a criminal case in which a defendant is accused of a sexual assault, the court may admit evidence that the defendant committed any other sexual assault. The evidence may be considered on any matter to which it is relevant." Fed. R. Evid. 413(a). Under the rule, "'sexual assault' means a crime under federal law or under state law . . . involving," among other conduct, "contact, without consent, between any part of the defendant's body—or an object—and another person's genitals or anus [or] between the defendant's genitals or anus and any part of another person's body; . . . or [] an attempt or conspiracy to engage in [such] conduct . . . ." Fed. R. Evid. 413(d).

Rule 413 was "designed to protect the public from crimes of sexual violence by permitting in sexual assault and child molestation cases evidence that the defendant has committed offenses of the same type on other occasions." *United States v. Seymour*, 468 F.3d

378, 384–85 (6th Cir. 2006) (citation modified). "As such, [it] create[s] an exception to the general ban on propensity evidence contained in Rule 404(b)." *Id.* at 385.

Yet evidence otherwise admissible under Rule 413 still must overcome the Rule 403 balancing test. *Id.* at 386. "We grant the district court very broad discretion in making its determinations" in a Rule 403 analysis. *United States v. Jakits*, 129 F.4th 314, 330 (6th Cir. 2025) (citation modified). Under the Rule 403 standard, "we review the admitted evidence by maximizing its probative value and minimizing its prejudicial effect," *United States v. Smith*, 70 F.4th 348, 352 (6th Cir. 2023) (citation omitted), "and will hold that the district court erred only if the latter outweighs the former," *United States v. Libbey-Tipton*, 948 F.3d 694, 701 (6th Cir. 2020) (quotation omitted).

In general, "evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401 (citation modified). "When applying Rule 413, evidence of prior assaults is relevant when the facts of the previous sexual assaults are similar to the charged offense." *United States v. Mandoka*, 869 F.3d 448, 453–54 (6th Cir. 2017) (citation modified). We have characterized this as a "very low threshold for relevance" where the prior assaults need only be "similar enough" to the charged offense. *Id.* at 454 (citation modified).

The district court admitted testimony of L.H. and I.B. under Rule 413. Baker first argues that he was not charged with sexual assault, so Rule 413 does not apply. He next argues that his prior offenses were too dissimilar to the present offense and thus are not relevant. Both arguments fail.

Count 2 of the superseding indictment charged Baker with knowingly persuading, inducing, enticing, or coercing S.H., a minor under thirteen years of age, "to engage in sexual activity." R. 33, PageID 96. Specifically, Baker attempted to engage in "sexual penetration" with S.H. This charge meets the definition of "sexual assault" under Rule 413 because it accuses Baker of violating federal law, 18 U.S.C. § 2422(b), by attempting to create contact between his genitals and S.H.'s genitals while S.H. was under the age of consent, *see* 18 U.S.C. § 2243(a)

(setting the federal age of consent at sixteen); *Esquivel-Quintana v. Sessions*, 581 U.S. 385, 394 (2017).

Baker argues that he was not accused of sexual assault because he did not make sexual contact with S.H. This argument fails because it ignores Rule 413's broad definition of "sexual assault," which does not require physical contact with the victim, only an attempt or conspiracy to engage in such conduct.

The prior-acts evidence regarding L.H. and I.B. was similar enough to the conduct charged in Count 2. Baker sexually assaulted L.H. in December 2022, when she was fifteen, and while he was conspiring with Fann to assault S.H. The conduct was therefore contemporaneous with his charged offense, and L.H. was close in age to S.H, who was eleven. *See Mandoka*, 869 F.3d at 451, 454 (admitting evidence of prior acts under Rule 413 when, among other similarities, the victims were "roughly the same age at the time of their respective assaults," between the ages of nine and sixteen). Just like with S.H., Baker met L.H. through an adult woman—Baker was in a relationship with the mother of L.H.'s friend. Baker gained the trust of L.H., who viewed him as a father figure, and he gave her short shorts as a gift—the same kind of shorts that he had S.H. try on with Fann's help. When Baker assaulted L.H. by touching her genitalia, she had consumed so much alcohol that she soon lost consciousness. Baker's planned assault of S.H., and his instructions to Fann to drug S.H. with a sleeping pill, mapped onto the approach and ultimate assault of L.H.

Baker sexually assaulted I.B. when she was eleven, the same age as S.H., and while he was conspiring with Fann to assault S.H. Baker knew I.B. through an adult woman—she was the daughter of Baker's girlfriend. Baker gained I.B.'s trust, and she viewed him as a father figure. Baker also bought a gift for I.B.—a tablet computer. These prior assaults clear the "very low" threshold of similarity to Baker's charged offense conduct. *See id.* at 454.

Baker cites one case in support of his dissimilarity argument, *United States v. Weiner*, 518 F. App'x 358 (6th Cir. 2013), but that case is readily distinguishable because it neither mentions nor analyzes Rule 413. Instead, it addressed whether a defendant's prior, uncharged sexual assaults were "relevant conduct" under U.S.S.G. § 1B1.3(a)(1)(A). *Id.* at 365.

Baker references the Rule 403 balancing test only in passing.  At any rate, there was no error below, especially considering the "very broad discretion" we grant the district court in making determinations in a Rule 403 analysis.  *Jakits*, 129 F.4th at 330 (quotation omitted).  The district court observed that Baker's prior acts were "particularly probative" of whether Baker intended to sexually exploit S.H.  R. 135, PageID 1207.  It reasoned that Baker's communications with Fann established that he "expressed an intent to have sex with [S.H.], and the evidence of prior acts are relevant to that intent and undermine any argument that [Baker] might present that the text messages [with Fann] were just talk without any action." *Id*. at 1208.  Accordingly, the district court ruled that the probative value of the prior acts evidence from L.H. and I.B. was "not substantially outweighed by the danger of unfair prejudice or any other concern identified in Rule 403." *Id*.  We conclude that the district court did not abuse its discretion in admitting the testimony of L.H. and I.B.

## III.

For the reasons above, we **AFFIRM** the district court's judgment.