*PRELIMINARY PRINT*

VOLUME 606 U. S. PART 1

PAGES 419–460

# OFFICIAL REPORTS

OF

# THE SUPREME COURT

JUNE 26, 2025

Page Proof Pending Publication

REBECCA A. WOMELDORF

REPORTER OF DECISIONS



NOTICE: This preliminary print is subject to formal revision before the bound volume is published. Users are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, pio@supremecourt.gov, of any typographical or other formal errors.

## HEWITT *v.* UNITED STATES

CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR
THE FIFTH CIRCUIT

No. 23–1002.    Argued January 13, 2025—Decided June 26, 2025*

Before the First Step Act was enacted in 2018, federal judges were required to sentence first-time offenders convicted of violating 18 U. S. C. § 924(c)—a law that criminalizes possessing a firearm while committing other crimes—to "stacked" 25-year periods of incarceration.   The First Step Act eliminated this harsh mandatory minimum penalty.   Section 403(b) of the Act also made its more lenient penalties partially retroactive.   Specifically, if a sentence "has not been imposed" upon an eligible § 924(c) offender as of the date of the First Step Act's enactment, the Act applies.   The question presented here concerns an edge case: What penalties apply when a § 924(c) offender *had* been sentenced as of the Act's enactment, but that sentence was subsequently vacated, such that the offender must face a post-Act resentencing?

In 2009, petitioners Tony Hewitt, Corey Duffey, and Jarvis Ross were convicted of multiple counts of bank robbery and conspiracy to commit bank robbery, along with corresponding § 924(c) offenses for use of a firearm during a crime of violence.   Each petitioner received a mandatory 5-year sentence for his first § 924(c) count of conviction and, despite being first-time offenders, each received 25-year mandatory sentences on every § 924(c) count beyond his first.   Thus, each petitioner's sentence exceeded 325 years.   Petitioners successfully challenged some of their convictions on direct appeal, and the Fifth Circuit vacated petitioners' sentences.   In 2012, the District Court resentenced each petitioner to between 285 and 305 years on the counts that remained.

In 2019, the Court held that the "crime of violence" definition the Government routinely used to support some § 924(c) convictions was unconstitutionally vague.   See *United States* v. *Davis*, 588 U. S. 445, 470. Because that holding potentially affected some of petitioners' remaining convictions, the Fifth Circuit granted petitioners authorization to file a second or successive postconviction motion.   The District Court then vacated the impacted § 924(c) convictions, as well as petitioners' sentences.   When the District Court held resentencings for the remaining convictions, petitioners argued that the First Step Act's 5-year—not 25-year—mandatory minimum penalties applied.   Petitioners argued they

———————
*Together with No. 23–1150, *Duffey et al.* v. *United States*, also on certiorari to the same court.

were entitled to retroactive application of the Act's more lenient penalties because a vacated prior sentence is not a sentence that "has . . . been imposed" for purposes of § 403(b). The District Court disagreed and resentenced petitioners under the pre-Act sentencing scheme, giving them stacked 25-year mandatory minimums for each § 924(c) count of conviction beyond their first. Petitioners thus each received sentences of 130 years or more.

On appeal, petitioners and the Government agreed that the First Step Act should have applied at petitioners' resentencings. The Fifth Circuit denied their joint request for vacatur. In that court's view, § 403(b) applies only "to defendants for whom 'a sentence . . . ha[d] not been imposed' as of the enactment date." 92 F. 4th 304, 310. Because each petitioner had been sentenced (twice) prior to the Act's enactment, the panel concluded that petitioners were not eligible for the First Step Act's more lenient mandatory minimums.

*Held*: The judgment is reversed, and the cases are remanded.

92 F. 4th 304, reversed and remanded.

JUSTICE JACKSON delivered the opinion of the Court with respect to Parts I, II, and III, concluding that under § 403(b) of the First Step Act, a sentence "has . . . been imposed" for purposes of that provision if, and only if, the sentence is extant—*i. e.*, has not been vacated. Thus, the Act's more lenient penalties apply to defendants whose previous § 924(c) sentences have been vacated and who need to be resentenced following the Act's enactment. Pp. 427–433.

(a) The text of § 403(b) and the nature of vacatur support this conclusion. Congress employed the present-perfect tense, requiring evaluation of whether "a sentence . . . has . . . been imposed" upon the defendant, rather than the past-perfect tense that would exclude anyone upon whom a sentence "had" been imposed. The present-perfect tense can refer to "an act, state, or condition that is now completed" or "a past action that comes up to and touches the present" and thus conveys that the event in question continues to be true or valid. The Chicago Manual of Style § 5.132, p. 268. When used in either sense, the present-perfect tense addresses whether something has continuing relevance to the present, not merely whether it occurred as a historical fact. If an event is merely a relic of history because it was voided by a subsequent action, the past-perfect (not the present-perfect) tense is usually the more appropriate verb choice. The fact that adjacent provisions of § 403 contain past-tense verbs only strengthens the conclusion that § 403(b)'s use of the present-perfect tense is meaningful. Pp. 427–431.

(b) Background principles regarding the legal effect of vacatur confirm that a sentence has been imposed for § 403(b) purposes only so long as it remains valid.  When interpreting statutes, the Court recognizes that Congress legislates against the backdrop of certain unexpressed presumptions.  One such presumption is that vacated court orders are void *ab initio* and thus lack any prospective legal effect.  A criminal defendant whose conviction has been vacated, for example, is to be treated going forward as though he were never convicted.  By operation of legal fiction, the law acts as though the previous conviction never occurred.  Section 403(b) reflects this commonsense understanding of background vacatur principles.  Just as defendants with vacated prior felony convictions are not precluded from possessing weapons under the federal felon-in-possession ban, § 403(b) retroactivity does not exclude from its scope those whose prior sentences were vacated.  By authorizing retroactive application of the First Step Act's more lenient penalties on any eligible offender upon whom "a sentence . . . has not been imposed," the text of § 403(b) indicates that only past sentences with continued validity preclude application of the Act's new penalties.  Pp. 431–433.

JACKSON, J., delivered the opinion of the Court with respect to Parts I, II, and III, in which ROBERTS, C. J., and SOTOMAYOR, KAGAN, and GORSUCH, JJ., joined, and an opinion with respect to Parts IV and V, in which SOTOMAYOR and KAGAN, JJ., joined.  ALITO, J., filed a dissenting opinion, in which THOMAS, KAVANAUGH, and BARRETT, JJ., joined, *post*, p. 440.

*Michael B. Kimberly* argued the cause for petitioners in both cases.  With him on the briefs for petitioner Hewitt were *Paul W. Hughes, Sarah P. Hogarth, Andrew A. Lyons-Berg, Charles Seidell, Eugene R. Fidell*, and *Charles A. Rothfeld*.  *Jo-Ann Tamila Sagar, Neal Kumar Katyal, Michael J. West, Dana A. Raphael, Vivek Jampala, John Torrey Hunter*, and *Kevin B. Ross* filed briefs for petitioner Duffey et al.

*Masha G. Hansford* argued the cause for the United States in both cases as respondent in support of petitioners.  With her on the briefs were *Solicitor General Prelogar, Principal Deputy Assistant Attorney General Argentieri, Deputy Solicitor General Feigin*, and *Andrew C. Noll.*

*Michael H. McGinley*, by invitation of the Court, 603 U. S. 939, argued the cause and filed a brief as *amicus curiae* in support of the judgment below. With him on the brief were *Steven A. Engel*, *M. Scott Proctor*, and *Brian A. Kulp*.†

JUSTICE JACKSON delivered the opinion of the Court, except as to Parts IV and V.‡

Before the First Step Act was enacted in 2018, federal judges were required to sentence certain first-time offenders convicted of violating 18 U. S. C. §924(c)—a law that criminalizes the possession of a firearm while committing other crimes—to "stacked" 25-year periods of incarceration. The First Step Act, 132 Stat. 5194, eliminated this harsh mandatory minimum penalty. Congress also made the Act's more lenient penalties partially retroactive. Section 403(b) specifies that the Act applies if a sentence "has not been imposed" upon an eligible §924(c) offender as of the date of the First Step Act's enactment. *Id.*, at 5222.

The question presented here concerns an edge case: What penalties apply when a §924(c) offender *had* been sentenced

---

†Briefs of *amici curiae* urging reversal were filed for the District of Columbia et al. by *Brian L. Schwalb*, Attorney General of the District of Columbia, *Caroline S. Van Zile*, Solicitor General, *Ashwin P. Phatak*, Principal Deputy Solicitor General, and *Sean Frazzette*, Assistant Attorney General, and by the Attorneys General for their respective States as follows: *Philip J. Weiser* of Colorado, *Kwame Raoul* of Illinois, *Aaron M. Frey* of Maine, *Anthony G. Brown* of Maryland, *Andrea J. Campbell* of Massachusetts, *Keith Ellison* of Minnesota, *Aaron D. Ford* of Nevada, *Matthew J. Platkin* of New Jersey, *Letitia James* of New York, *Ellen F. Rosenblum* of Oregon, and *Charity R. Clark* of Vermont; for the American Civil Liberties Union et al. by *Kevin Poloncarz*, *Barbara E. Bergman*, *Clark M. Neily III*, *Shana-Tara O'Toole*, *David D. Cole*, *Mary Price*, *Emma Andersson*, *Nathan Freed Wessler*, *Yasmin Cader*, and *Cecillia D. Wang*; and for Sen. Richard J. Durbin et al. by *Brent J. Gurney*.

‡THE CHIEF JUSTICE and JUSTICE GORSUCH join all but Parts IV and V of this opinion.

as of the Act's enactment, but that sentence was subsequently vacated, such that the offender must face a post-Act resentencing?  We hold that, under that circumstance, a sentence "has not been imposed" for purposes of § 403(b). Thus, the First Step Act's more lenient penalties apply.

I

Title 18 U. S. C. § 924(c) criminalizes the use or possession of a firearm during and in relation to a crime of violence or drug-trafficking offense.  The statute prescribes a 5-year mandatory minimum penalty for any first-time offense, which must run consecutively to any other term of imprisonment.  §§ 924(c)(1)(A)(i), (c)(1)(D)(ii).  Before the First Step Act, § 924(c) also contained a recidivism enhancement that required imposition of an additional 25 years of imprisonment (on top of the 5-year mandatory minimum) for any "second or subsequent conviction under this subsection." § 924(c)(1)(C)(i) (2006 ed.).

In *Deal* v. *United States*, 508 U. S. 129 (1993), this Court interpreted that recidivism-related language to require an enhanced penalty for each and every § 924(c) count of conviction beyond a defendant's first—even if those convictions were part of the same criminal prosecution.  *Id.*, at 132–137. As a result, a first-time offender convicted of two § 924(c) counts would receive a mandatory 25-year sentence on the second count, "stacked" upon (*i. e.*, running consecutively to) the first count's mandatory 5-year sentence, for a total of 30 years of imprisonment.[1]  And each additional § 924(c) count would add another 25 years to that defendant's total term of incarceration.  See *id.*, at 131–132.  Under this "stacking" interpretation of § 924(c)'s recidivism enhancement, sen-

---

[1] When this Court decided *Deal* in 1993, the enhanced mandatory minimum penalty under § 924(c) was 20 years.  See 18 U. S. C. § 924(c) (1988 ed.).  Congress increased the mandatory minimum to 25 years in 1998. See § 924(c) (1994 ed., Supp. IV); 112 Stat. 3469.

tences for § 924(c) offenses ballooned rapidly to span decades
or even centuries.

On December 21, 2018, a supermajority of Congress
enacted the First Step Act, a landmark piece of legislation
that changed the federal criminal-sentencing system in nu-
merous respects.   See 132 Stat. 5194.   Among other things,
§ 403(a) of the First Step Act "clarifi[ed]" that district court
judges are *not* required to impose stacked 25-year sentences
when sentencing first-time § 924(c) offenders.   *Id.*, at 5221–
5222 (capitalization deleted).   Abrogating this Court's deci-
sion in *Deal*, the statute established instead that, for first-
time offenders, 5-year mandatory minimums apply to each
count of conviction.

The First Step Act also addressed the potential for retro-
active application of this penalty reduction, by specifically
identifying the § 924(c) offenders to whom the Act applied.
Ordinarily, because judges impose sentences based on the
statutory penalties that exist at the time defendants commit
their offenses, 1 U. S. C. § 109, statutory changes to federal
penalties only benefit *future* offenders.   But Congress al-
tered this default no-retroactivity rule in the Act itself.
Section 403(b)—titled "Applicability to Pending
Cases"—made § 403(a)'s reduced penalties applicable to cer-
tain *existing* § 924(c) offenders, as follows:

> "This section, and the amendments made by this section,
> shall apply to any offense that was committed before the
> date of enactment of this Act, if a sentence for the of-
> fense has not been imposed as of such date of enact-
> ment."   § 403(b), 132 Stat. 5222.

## II

In 2009, petitioners Tony Hewitt, Corey Duffey, and Jarvis
Ross were convicted of multiple counts of bank robbery and
conspiracy to commit bank robbery, along with correspond-
ing § 924(c) offenses for use of a firearm during a crime of

violence.  Each petitioner received a mandatory 5-year sentence as to their first § 924(c) count of conviction.  And, despite being first-time offenders, each received 25-year mandatory sentences on every § 924(c) count beyond their first. Thus, in total, each petitioner's sentence exceeded 325 years. Roughly 25 of those years were due to the robbery offenses themselves, while the rest were attributable to stacked § 924(c) counts.

Petitioners successfully challenged some of their convictions on direct appeal, and the Fifth Circuit accordingly vacated petitioners' sentences.[2]  In 2012, the District Court resentenced each petitioner to between 285 and 305 years on the counts that remained—sentences that the Fifth Circuit affirmed on direct review.  Petitioners also filed postconviction motions under 28 U. S. C. § 2255, which were each denied.

After Congress passed the First Step Act in 2018, this Court held that the "crime of violence" definition the Government routinely used to support some § 924(c) convictions was unconstitutionally vague.  See *United States* v. *Davis*, 588 U. S. 445, 470 (2019).  Because that holding potentially affected some of petitioners' remaining convictions, the Fifth Circuit granted petitioners authorization to file a second or successive postconviction motion under 28 U. S. C. § 2255. The District Court then vacated the impacted § 924(c) convictions, as well as petitioners' sentences.

When the District Court held resentencings for the remaining convictions, petitioners argued that the First Step Act's 5-year—not 25-year—mandatory minimum penalties applied.  Petitioners argued that they were entitled to retroactive application of the First Step Act's more lenient pen-

_____

[2] Petitioners were initially convicted of attempted bank robbery, too. Those convictions—along with the corresponding § 924(c) counts—were vacated following petitioners' successful challenges on direct appeal.  See *United States* v. *Duffey*, 456 Fed. Appx. 434, 444–445 (CA5 2012).

alties because a vacated prior sentence is not a sentence that "has . . . been imposed" for purposes of §403(b).[3]   The District Court disagreed and resentenced petitioners under the pre-Act sentencing scheme, giving them stacked 25-year mandatory minimum sentences for each §924(c) count of conviction beyond their first.   Petitioners thus each received sentences of 130 years or more—105 years of which were attributable to stacked §924(c) penalties.

On appeal, petitioners and the Government agreed that the First Step Act should have applied at petitioners' resentencings.   The parties thus jointly requested vacatur of petitioners' sentences, which the Fifth Circuit denied.   92 F. 4th 304, 310 (2024) (case below).   In that court's view, §403(b) applies only "to defendants for whom 'a sentence . . . ha[d] not been imposed' as of the enactment date."   *Ibid.* (alteration in original).   Because each petitioner had been sentenced (twice) prior to the Act's enactment, the panel concluded that petitioners were not eligible for the First Step Act's more lenient mandatory minimums.

We granted certiorari to decide whether §403(b) of the First Step Act confers the benefit of the Act's more lenient penalties to defendants facing post-Act resentencing following vacatur of their pre-Act sentence.   603 U. S. 904 (2024).[4]

---

[3] During Duffey's and Ross's resentencings before the District Court, the Government maintained that petitioners were ineligible for First Step Act relief.   But, by the time of Hewitt's resentencing, the Government had changed its position; it supported Hewitt's request for resentencing under the Act.

[4] The Courts of Appeals have divided over whether offenders who were sentenced pre-Act, but whose sentences were later vacated, are eligible to receive First Step Act benefits at their post-Act resentencing.   Compare *United States* v. *Merrell*, 37 F. 4th 571, 577–578 (CA9 2022) (holding that, under §403(b), such an offender benefits from the Act at resentencing), and *United States* v. *Mitchell*, 38 F. 4th 382, 386–389 (CA3 2022) (same), with *United States* v. *Jackson*, 995 F. 3d 522, 525–526 (CA6 2021) (holding that such an offender does not benefit from the Act at resentencing, if the prior sentence was vacated after the Act's enactment); see also *United States* v. *Uriarte*, 975 F. 3d 596, 601–602, and n. 3 (CA7 2020) (en banc)

Opinion of the Court

Because the United States agrees with petitioners on the merits of their appeals, the Court appointed Michael H. McGinley as *amicus curiae* to defend the judgment below.   603 U. S. 939 (2024).   He has ably discharged his responsibilities.

## III

The Fifth Circuit held, and *amicus* and the dissent contend, that §403(b) excludes any defendant who was sentenced prior to the enactment date of the First Step Act—even if his sentence was later vacated.   That is so, in their view, because the Act applies only "if a sentence for the offense has not been imposed as of" the Act's enactment date, and a sentence "*has* . . . been imposed" upon that defendant as a matter of historical fact.   132 Stat. 5222 (emphasis added).   But based on the text of §403(b) and the nature of vacatur, we conclude that a sentence has been imposed for purposes of that provision if, and only if, the sentence is extant—*i. e.*, has not been vacated.

### A

To understand why this is so, focus first on the language Congress used.   Most notably, the operative phrase is *not* written in the past-perfect tense, excluding anyone upon whom a sentence "had" been imposed.   Rather, Congress employed the present-perfect tense—thereby requiring evaluation of whether "a sentence . . . *has* . . . been imposed" upon the defendant.   §403(b), 132 Stat. 5222 (emphasis added).   In this context, that distinction makes a difference. See *United States* v. *Wilson*, 503 U. S. 329, 333 (1992) ("Congress' use of a verb tense is significant in construing statutes").

The present-perfect tense can refer to either (1) "an act, state, or condition that is *now* completed" or (2) "a past ac-

---

(holding that such an offender benefits from the Act if his sentence was vacated prior to the Act's enactment date, but reserving judgment as to postenactment vacatur).

tion that comes up to and touches the *present*." The Chicago Manual of Style § 5.132, p. 268 (17th ed. 2017) (emphasis added). But when used in either sense, the tense simultaneously "involves reference to both past and present." R. Huddleston & G. Pullum, The Cambridge Grammar of the English Language 143 (2002). That is, while "the primary focus is on the present," the past maintains "'current relevance.'" *Ibid.* (confirming that the present-perfect tense addresses "a time-span beginning in the past and extending up to now").[5] Thus, one might employ the present-perfect tense to describe situations "involv[ing] a specific change of state" that produces a "continuing result." *Id.*, at 145 (boldface deleted).

Here is an example. Suppose the U. S. Olympic Committee enacted a rule stating that athletes may call themselves Olympic champions if a gold medal "has been awarded" to them. Pursuant to that rule, a U. S. sprinter who took first place in the 2016 Summer Olympics' 100-meter finals could validly proclaim—today—that she is "an Olympic champion." The existence of her win as a historical event triggers the rule's proper application, because it gives rise to the inference that the athlete *remains* an Olympic gold medalist at present, thereby justifying her continued use of the "Olympic champion" title. See *ibid.* (explaining that the relevant "connection with the present" here would be "that the resultant state still obtains now").

---

[5] A primary flaw of the dissent's textual argument is its failure to appreciate that, under either meaning of the present perfect, the event in question must relate to *now.* In other words, while the dissent accurately observes that the present-perfect tense can be used in one of two ways, see *post*, at 443 (opinion of ALITO, J.), it ignores that neither refers to circumstances that are wholly in the past. What makes this the *present-*perfect tense is that, in each of its manifestations, there exists a connection to the present. See Huddleston, Cambridge Grammar of the English Language, at 143 (confirming that references "to times wholly before now"—when the present "is explicitly or implicitly excluded"—are largely "incompatible with the present perfect").

But now imagine that the Olympic Committee stripped this sprinter of her medal after discovering that she used performance-enhancing drugs during the competition. Can that athlete, under the rule, still call herself an Olympic champion? The answer is no. Yes, she *had* been awarded such a medal, but it was revoked; the fact that she stood on the podium and was declared the winner in 2016 is inapposite for purposes of establishing whether she qualifies for Olympic-champion bragging rights under the rule today.[6]

When used in this way, the present-perfect tense conveys to a listener that the event in question continues to be true or valid. The dissent counters that, for purposes of the First Step Act, the relevant moment of analysis should not be the present, but rather the statute's date of enactment. See *post*, at 444. But that reframing is inconsistent with normal understandings of the present-perfect tense, which by definition focuses on the *present*.[7] Today, if an event is merely a relic of history because it was voided by a subsequent action, the past-perfect (not the present-perfect) tense

_____

[6] The dissent does not dispute that a sprinter who is divested of her gold medal no longer qualifies as an "Olympic champion" under the hypothetical rule. Nor does the dissent contest that, if the Committee wanted such a disqualified sprinter to be able to still claim the title, it could phrase the rule in the past-perfect tense to accomplish that result (*i. e.*, bestowing the honorific if a gold medal "had been awarded" to the athlete). The dissent's primary response to this hypothetical is, instead, to zero in on "[t]he obvious purpose of the hypothetical rule" and to explain that "the meaning of language is heavily dependent on context." *Post*, at 449, n. 3. Part IV of this opinion fully addresses the context of §403(b)'s language and Congress's primary objectives for enacting that provision—both of which support the Court's conclusion in these cases.

[7] And, notably, there is a relevant connection to the present in the operation of §403(b) despite that statute's express reference to the date of the Act's enactment: the current occasion of the sentencing of the defendant in question. Sentencing courts read statutes at the moment of their application—which, here, would be the moment of resentencing, not the moment of enactment. From that proper vantage point, petitioners were not subject to a sentence, as any previous sentence had been vacated.

would usually be the more appropriate verb choice. See B. Garner, Modern English Usage 1082 (5th ed. 2022) (explaining that the past-perfect tense "represents an action as completed at some definite time in the past—that is, before some other past time referred to"); Chicago Manual of Style § 5.133, at 268 (confirming that the past perfect "refers to an act, state, or condition that was completed before another specified or implicit past time or past action"). Our disqualified sprinter could thus still boast of her Olympic-champion status if the rule were, instead, that any athlete who "*had* been awarded" a gold medal was entitled to use that honorific.

The fact that adjacent provisions of § 403 contain past-tense verbs only strengthens the conclusion that § 403(b)'s use of the present-perfect tense is meaningful. Cf. *Barrett* v. *United States*, 423 U. S. 212, 217 (1976) (emphasizing when Congress "used the present perfect tense . . . in contrast to its use of the present tense" elsewhere in the statute). Section 404(c), for example, utilizes the simple past tense to address a defendant's prior sentencing. See 132 Stat. 5222 ("No court shall entertain a motion made under this section to reduce a sentence if the sentence *was* previously imposed or previously reduced in accordance with" the relevant amendments (emphasis added)). The past tense also features earlier in § 403(b) itself. See *ibid.* (covering "any offense that *was* committed before the date of enactment of [the] Act" (emphasis added)). But the verb tense at issue here ("has been") is conspicuously different—making only clearer that a past sentence must have a relevant connection to the present for purposes of the retroactivity provision.

Indeed, *amicus* and the dissent's historical-fact reading of § 403(b) calls so naturally for the *past*-perfect tense that jurists who share this view often employ that tense by default. The Fifth Circuit below, for instance, stated that "the First Step Act applies to defendants for whom 'a sentence . . . ha[d] not been imposed' as of the enactment date." 92 F. 4th, at

Opinion of the Court

310 (alteration in original). Other courts have construed § 403(b) similarly. See, *e. g.*, *United States* v. *Jackson*, 995 F. 3d 522, 525 (CA6 2021) (noting that "as of December 21, 2018, a sentence had been imposed" upon the defendant, even though it was later vacated). Congress of course "could have phrased its requirement in language that looked to the past . . . , but it did not choose this readily available option." *Gwaltney of Smithfield, Ltd.* v. *Chesapeake Bay Foundation, Inc.*, 484 U. S. 49, 57 (1987). The natural inference, then, is that Congress meant what it said, and, thus, that § 403(b) covers only past sentences with continued legal validity, not those that have been vacated.

B

Background principles regarding the legal effect of vacatur confirm that a sentence has been imposed for § 403(b) purposes only so long as it remains valid. When interpreting statutes, we "recogniz[e] that 'Congress legislates against the backdrop' of certain unexpressed presumptions." *Bond* v. *United States*, 572 U. S. 844, 857 (2014) (quoting *EEOC* v. *Arabian American Oil Co.*, 499 U. S. 244, 248 (1991)). One such presumption is that vacated court orders are void *ab initio* and thus lack any prospective legal effect. See *United States* v. *Ayres*, 9 Wall. 608, 610 (1870) ("[V]acating the former judgment . . . render[s] it null and void, and the parties are left in the same situation as if no trial had ever taken place in the cause"). By operation of legal fiction, the law acts as though the vacated order never occurred.

A criminal defendant whose judgment of conviction has been vacated, for example, is to be treated going forward as though he were never convicted. See *Fiswick* v. *United States*, 329 U. S. 211, 223 (1946) (confirming that one whose conviction is vacated "stand[s] in the position of any [person] who has been accused of a crime but not yet shown to have committed it"). Thus, if Congress were to pass a stimulus

provision that gives checks to any small-business owner who "has not been convicted of fraud," an owner would not be rendered ineligible on the basis of a fraud conviction that was overturned on appeal. While the owner *had* been convicted of fraud, that judgment was invalidated and therefore became legally inoperable. In other words, that vacated conviction is subsequently treated as no conviction at all. See *North Carolina* v. *Pearce*, 395 U. S. 711, 721 (1969) (verifying that vacatur causes a conviction to be "wholly nullified and the slate wiped clean").[8]

Section 403(b) reflects this "common-sense" understanding of background vacatur principles. *Lewis* v. *United States*, 445 U. S. 55, 61, n. 5 (1980). Just as defendants with vacated prior felony convictions are not precluded from possessing weapons under the federal felon-in-possession ban, § 403(b) retroactivity does not exclude from its ambit those whose prior sentences have been vacated. See *ibid.*; 18 U. S. C. § 922(g)(1); see also *Pepper* v. *United States*, 562 U. S. 476, 507 (2011) (explaining that vacatur of a criminal sentence "wipe[s] the slate clean").

---

[8] The dissent erroneously suggests that, under our precedents, a vacated sentence continues to exist as a historical fact and thus retains prospective legal effect. See *post*, at 451–453. But the cases it cites do not support that contention. In *Lewis* v. *United States*, 445 U. S. 55 (1980), for example, we considered whether the invalidity of one's predicate felony conviction precludes conviction as a felon in possession of a weapon under federal law. *Id.*, at 58. We concluded the federal conviction could stand when the defendant's prior felony conviction had "never been overturned"—*i. e.*, vacated—at the time he possessed the weapon. *Id.*, at 57. But we dismissed as "extreme" arguments suggesting that a *vacated* conviction could have such prospective legal effect. *Id.*, at 61, n. 5 (confirming the "common-sense" notion that "a disability based upon one's status as a convicted felon" ceases as a matter of law as soon as "the conviction upon which that status depends has been vacated"). *Bravo-Fernandez* v. *United States*, 580 U. S. 5 (2016), is similarly unhelpful. That case concerned issue preclusion and jury findings and does not stand for the proposition that a vacated order itself retains continuing legal effect in the relevant sense.

By authorizing retroactive application of the First Step Act's more lenient penalties on any eligible offender upon whom "a sentence . . . has not been imposed," the text of §403(b) indicates that only past sentences with continued validity preclude application of the Act's new penalties. A judge would thus correctly conclude at *re*sentencing that, if an offender's past sentence has been vacated, a sentence "has not been imposed" upon that offender for purposes of the First Step Act; hence, the court can impose a *new* sentence today.

## IV

### A

The context and enactment history of the First Step Act and §403(b) further demonstrate that Congress's choice of the present-perfect tense was not accidental. Rather, Congress was reacting to sustained criticism of the prior sentencing scheme, and with §403(b), it intended to execute a clean break from the controversial and heavily contested "stacking" practice.

Sentencing judges had been among the harshest critics. Before the First Step Act was enacted, more than one veteran District Court Judge decried how the "stacking" punishment for first-time §924(c) offenders was "grossly disproportionate" and "shockingly harsh given the nature" of the offenses and a defendant's "lack of criminal history." *United States* v. *Washington*, 301 F. Supp. 2d 1306, 1309 (MD Ala. 2004) (lamenting the requirement of a 40-year term of imprisonment for a 22-year-old first-time offender, and remarking that it was "the worst and most unconscionable sentence [the judge] ha[d] given in his 23 years on the federal bench").[9] Judges on the Federal Courts of Appeals also

---

[9] See also, *e. g.*, *United States* v. *Holloway*, 68 F. Supp. 3d 310, 312 (EDNY 2014) (noting that §924(c) stacking "produce[d] sentences that would be laughable if only there weren't real people on the receiving end of them"); *United States* v. *Angelos*, 345 F. Supp. 2d 1227, 1244–1245, 1248 (Utah 2004) (assailing being required to give a 24-year-old who had pos-

"join[ed] in the litany of criticisms directed towards" § 924(c)'s penalty regime for requiring the imposition of sentences that were "'out of this world.'" *United States* v. *Hunter*, 770 F. 3d 740, 746–747 (CA8 2014) (Bright, J., concurring); see also *United States* v. *Hungerford*, 465 F. 3d 1113, 1118–1119 (CA9 2006) (Reinhardt, J., concurring in judgment) (deeming "irrational, inhumane, and absurd" the mandatory 159-year sentence imposed upon "a 52 year-old mentally disturbed woman with no prior criminal record" who had otherwise "led a spotless, law-abiding existence"); *United States* v. *Smith*, 756 F. 3d 1179, 1181 (CA10 2014) (Gorsuch, J.) (observing that it was "no fanciful possibility" that § 924(c) stacking would lead to "prison term[s] of many decades" that were "certain to outlast the defendant's life and the lives of every person now walking the planet").

Meanwhile, other institutional stakeholders raised similarly pointed objections to *Deal*'s stacking system. In its annual report to Congress, the United States Sentencing Commission criticized how § 924(c) stacking had "result[ed] in excessively severe and unjust sentences," particularly in cases in which "the offense did not involve any physical harm or threat of physical harm to a person." U. S. Sentencing Commission, Report to the Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System 359 (Oct. 2011). The United States Judicial Conference expressed similar concerns.[10]

──────────

sessed weapons while dealing small amounts of marijuana "more than doubl[e]" the sentence recommended for crimes resulting in "actual violence to victims," such as "hijack[ing]" an airplane, "detonat[ing] a bomb in a public place," or committing "rap[e]" or "second-degree murde[r]").

[10] See, *e. g.*, Hearing before the Over-Criminalization Task Force of 2014 of the House Committee on the Judiciary, 113th Cong., 2d Sess., 41 (2014) (testimony of the Hon. Irene Keeley, U. S. District Judge, Judicial Conference of the U. S.) (explaining that § 924(c) stacking produced "particularly egregious" sentences for first-time offenders that ran "contrary to the interests of justice" and "undermine[d] confidence" in its administration).

The problem, as all seemed to recognize, was not that federal law permitted judges to impose lengthy sentences with respect to first-time § 924(c) offenders—it was that the statute, as *Deal* had interpreted it, *required* it.   District judges could not adhere to the statutory command that they give sentences that are "sufficient, but not greater than necessary, to comply with the purposes" of punishment, 18 U. S. C. § 3553(a), if they were also required to sentence first-time offenders to § 924(c)'s unduly harsh mandatory minimum penalties.   Additionally problematic was the fact that, while federal law requires sentencing judges to "avoid unwarranted sentence disparities among defendants," § 3553(a)(6), the variation among prosecutors' charging practices meant that § 924(c) stacking was a reality for only *some* first-time offenders.[11]

With sentencing judges routinely imposing what amounted to mandatory life sentences on first-time § 924(c) offenders, in 2018, Congress eventually heeded the public outcry.   An "extraordinary political coalition" formed, as members of

———————

[11] The policies of U. S. Attorney's Offices diverged as to when—or whether—they would bring multiple § 924(c) counts, a decision over which judges lack any control.   See *id.*, at 45 (testimony of the Hon. Patti Saris, Chair, U. S. Sentencing Commission).   This produced disparate sentencing outcomes for similarly situated offenders across judicial districts.   See U. S. Sentencing Commission, Report to the Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System 361–362 (Oct. 2011) (attributing the "geographic concentration" associated with § 924(c) sentencing "to inconsistencies in the charging of multiple violations of section 924(c)"); see also *In re Hernandez*, 857 F. 3d 1162, 1169 (CA11 2017) (Martin, J., concurring in result) (finding "troubling" that the defendant "might never have received this [stacked] sentence if he had been sentenced in another part of the country").   In one case in which prosecutors stacked additional § 924(c) counts after the defendant refused a plea offer, the District Judge specifically lamented the "risk of massive sentencing disparity between identically-situated offenders within the federal system," because other U. S. Attorney's Offices might not have proceeded in that same fashion.   *United States* v. *Angelos*, 345 F. Supp. 2d 1227, 1253–1254 (Utah 2004).

Congress worked together to develop "a bipartisan sentencing and prison reform bill" to address § 924(c) stacking. 164 Cong. Rec. S7645 (Dec. 17, 2018) (statement of Sen. Durbin); see also Brief for Sen. Richard J. Durbin et al. as *Amici Curiae* 5–8 (Senators Brief). The First Step Act was the much-anticipated, much-heralded fruit of their labor—and one that many in Congress hoped would yield immediate benefits. See *id.*, at 17.[12]

## B

It is noteworthy for present purposes that the statute Congress crafted to depart from the much-maligned "stacking" sentencing regime did so in a two-part fashion. First, § 403(a) eliminated 25-year stacked sentences for first-time § 924(c) offenders. Second, § 403(b) addressed the retroactivity of the § 403(a) benefit in a "'targeted way,'" so as to ensure that judges were no longer constrained to impose 25-year stacked sentences on first-time § 924(c) offenders moving forward. *Id.*, at 15 (quoting 164 Cong. Rec., at S7645 (statement of Sen. Durbin)).

That second part of Congress's response—the focus of the cases before us today—was highly consequential. By displacing the background rule that changes to sentencing statutes apply only prospectively (to defendants who commit their offenses *after* the law's effective date), Congress made clear that the First Step Act's more lenient penalties were to apply to some "'pending'" cases, too—*i. e.*, the new penalties would be applicable to certain defendants who had committed their offenses before the First Step Act. Senators Brief 15 (quoting § 403(b), 132 Stat. 5222). Per § 403(b), any defendant who still needed to be sentenced as of the First

---

[12] The dissent agrees that our job is to "interpret what Congress meant" by the words in § 403(b). *Post*, at 443. Here, Congress's desire to change the derided, draconian sentencing stacking scheme *Deal* had created could not be clearer. Thus, far from "march[ing] in the parade of sentencing reform," *post*, at 441, we are merely observing the events and circumstances that led Congress to take up the banner of sentencing reform itself.

Step Act's effective date would receive the Act's more lenient penalties. Thus, as a practical matter, judges would no longer have to impose harsh "stacked" sentences upon first-time § 924(c) offenders.

Notably, because § 403(b) retroactivity was only partial, it differed substantially from the full retroactivity Congress employed with respect to other kinds of penalty changes it instituted in the First Step Act. See, *e. g.*, § 404(b), 132 Stat. 5222; *Terry* v. *United States*, 593 U. S. 486, 491 (2021) (explaining that Congress made the First Step Act's statutory changes to the crack-cocaine minimums fully retroactive, and thus "gave courts authority to reduce the sentences" of previously sentenced crack offenders, where applicable). Congress certainly had the full-retroactivity option before it when it crafted § 403; indeed, earlier versions of the Act would have extended § 403(a) benefits to at least some § 924(c) offenders who were already sentenced. See, *e. g.*, Sentencing Reform Act of 2015, H. R. 3713, 114th Cong., 2d Sess., § 5(b)(2), pp. 14–16 (2016) (providing for reduced terms of imprisonment in "certain past cases" (capitalization and italics deleted)); Sentencing Reform and Corrections Act of 2017, S. 1917, 115th Cong., 1st Sess., § 104(b)(2), pp. 13–15 (2017) (permitting "sentence reduction" for certain "past cases" (capitalization deleted)). But authorizing the reopening of closed cases upends finality and can also be administratively burdensome. See Senators Brief 15 (noting that Congress forwent full retroactivity to serve "judicial economy" and "preserv[e] sentences that were actually valid and final"). Section 403's partial retroactivity avoided these problems, while still advancing Congress's aim of changing how first-time § 924(c) defendants are sentenced.

In short, § 403(b)—a middle-ground solution to the problem of harsh "stacked" sentences for first-time § 924(c) offenders—reflected a balance of Congress's policy objectives. By leaving intact § 924(c) sentences that judges had already imposed, Congress reinforced its interest in finality and

avoided burdening district courts with additional litigation. But it also substantially advanced its goal of returning a significant amount of sentencing discretion to district court judges moving forward, by giving retroactive effect to the Act's more lenient penalties for those first-time § 924(c) offenders who had yet to be sentenced.

V

The reading of § 403(b) that petitioners and the Government promote thus coheres with the text, context, and history of that provision. Under this view, First Step Act sentencing benefits apply to all first-time § 924(c) offenders sentenced after the Act's enactment date (whether it is an initial sentencing or a resentencing). This means that § 403(b)'s retroactivity line falls between those past § 924(c) offenders with final sentences that are still in effect, on the one hand, and those who still need to be sentenced for their § 924(c) offense, on the other. The former are stuck with their old sentences, for finality reasons, while the latter are eligible for First Step Act benefits at resentencing, since they have to be sentenced regardless.

Under *amicus* and the dissent's reading, however, there exists a *further* line of division within the group of offenders who currently lack a sentence—separating those who have been sentenced previously for the § 924(c) offense at issue from those who have not. For individuals in the former camp, per *amicus* and the dissent, a judge must return to the superseded sentencing scheme and impose stacked 25-year sentences when such defendants are resentenced.

Carving up the yet-to-be-sentenced group of offenders in this way does not reflect Congress's intent. See Senators Brief 17 (a bipartisan group of Senators, explaining that "[t]he considerations animating the First Step Act's enactment undermine any suggestion that Congress intentionally excluded from Section 403's reach pre-Act offenders whose sentences are invalid as a matter of law"). Nor does it com-

port with the statutory scheme that Congress enacted, for two primary reasons.

First, the text and context of §403(b) do not support differentiating between §924(c) offenders on the mere basis of the historical fact of a past sentencing (as we explained in Part III, *supra*), and, frankly, it is not clear what distinguishing between previously sentenced and never-before-sentenced offenders would accomplish. The prior imposition of a sentence does not bear on finality; if the offender currently lacks a sentence, then a court will have to resentence the defendant in any event. And though it would make sense to draw the line as *amicus* and the dissent do if the prior imposition of a sentence helped judges to more accurately identify serious first-time §924(c) offenders—potentially justifying the harsh and outdated stacked penalties that the First Step Act supplanted—nothing in the legislative record suggests this is so. Stated simply: The distinction between previously sentenced defendants and those who have never been sentenced before seems to make no difference in terms of the retroactivity aims of the statute.

By contrast, requiring judges to impose *Deal*-era stacked §924(c) sentences at resentencings runs headlong into the animating aims of the First Step Act. See *Miller* v. *French*, 530 U. S. 327, 341 (2000) (rejecting an interpretation that would undermine the statute and run "plainly contrary to Congress' intent in enacting" it). Neither *amicus* nor the dissent can explain why Congress would have wanted sentencing judges, who are presently working to dole out proportionate plenary sentences under the new regime, to have to return to the draconian, pre-Act scheme for offenders who just happen to be facing resentencing, as opposed to first sentencing. Requiring that kind of reversion prevents judges from uniformly moving past *Deal*, which was the primary point of Congress's enactment of §403.

Second, the reading of §403(b) that we adopt today is plainly more administrable than the one *amicus* and the dis-

sent offer. *Amicus* argues that his interpretation is easy to apply, because a district judge only needs to know whether a prior sentence had ever been imposed upon the defendant for the relevant offense. But that knowledge is not enough—the sentencing judge would *still* need to reference, recall, and apply the superseded "stacking" regime, if applicable. And there is a much more straightforward way to administer § 403(b): From the Act's enactment date onward, sentencing judges impose the First Step Act's lessened mandatory minimums for any first-time § 924(c) offender—full stop. This reading of § 403(b) requires no additional effort on the part of the judge to track down a defendant's sentencing history or to confirm what mandatory minimums previously governed. And it allows district judges to treat all first-time § 924(c) defendants who appear before them for sentencing in an equitable manner that minimizes sentencing disparities, consistent with Congress's sentencing directives.

\* \* \*

Under the interpretation of § 403(b) we adopt today, all first-time § 924(c) offenders who appear for sentencing after the First Step Act's enactment date—including those whose previous § 924(c) sentences have been vacated and who thus need to be resentenced—are subject to the Act's revised penalties. The Fifth Circuit's contrary reading of § 403(b) is reversed, and its judgment in these cases is remanded for further proceedings.

*It is so ordered.*

JUSTICE ALITO, with whom JUSTICE THOMAS, JUSTICE KAVANAUGH, and JUSTICE BARRETT join, dissenting.

In the First Step Act of 2018, Congress reduced the mandatory-minimum sentence for certain firearm offenses. Like all changes to sentencing law, this amendment applies prospectively. But Congress also thought it wise to apply the amendment to "Pending Cases." Of course, "Pending

Cases" does not mean "All Cases," and Congress limited the retroactive reach of the amendment to defendants for whom "a sentence for the offense has not been imposed as of [the Act's] date of enactment." 132 Stat. 5222. In other words, the amendment applies retroactively only if the defendant had yet to be sentenced when Congress passed the Act in 2018. Petitioners, who were sentenced in 2010, do not come close to meeting that test.

Today, the Court disfigures the Act in order to reach a different result. Its interpretation relies on two necessary premises. First, the Court insists that what Congress really meant to say is that the amendment applies retroactively unless "a **legally valid** sentence" is in force on the Act's date of enactment. Second, to get around the fact that petitioners *did* have "legally valid" sentences when the Act was passed, the Court invents a novel "vacatur" principle. The Court tells us that the 2022 vacatur of petitioners' sentences rendered those sentences legal nullities from their inception. The Court's interpretation thus unspools the Act's carefully wound retroactivity command to mean that *any* defendant whose sentence is vacated at *any* time and for *any* reason may claim the benefit of the Act's reduced mandatory minimum. But nothing in the text or broader context supports such a boundless interpretation. Indeed, the portions of today's decision that command the votes of only three Justices give the game away. Animating the Court's atextual interpretation is a thinly veiled desire to march in the parade of sentencing reform. But our role is to interpret the statute before us, not overhaul criminal sentencing.

I

Sixteen years ago, a jury convicted petitioners Corey Duffey, Tony Hewitt, and Jarvis Ross of multiple 18 U. S. C. § 924(c) offenses for use of a firearm in furtherance of a crime of violence. At the time, first-time § 924(c) offenders like petitioners could receive, after a single trial, a 5-year

mandatory-minimum sentence for an initial § 924(c) conviction and a consecutive 25-year mandatory-minimum sentence for each "second or subsequent" § 924(c) conviction.　See §§ 924(c)(1)(A)(i),　(c)(1)(C),　(c)(1)(D)(ii)　(2012　ed.); *Deal* v. *United States*, 508 U. S. 129, 137 (1993).　In 2010, the District Court sentenced petitioners under this so-called stacking procedure, and after a remand, the District Court resentenced petitioners in 2012.　Direct review of their convictions and sentences was complete by 2015.　See *United States* v. *Ross*, 544 Fed. Appx. 544, 545 (CA5 2013) (*per curiam*) (dismissing Duffey's appeal because it presented "no nonfrivolous issue for appellate review"); *United States* v. *Ross*, 582 Fed. Appx. 528 (CA5 2014) (*per curiam*) (affirming Hewitt's and Ross's sentences); *Hewitt* v. *United States*, 574 U. S. 1201 (2015) (denying Hewitt's petition for a writ of certiorari).

Petitioners' sentences had thus long been final when Congress enacted the First Step Act on December 21, 2018. The Act introduced a bevy of sentencing reforms, including an amendment that eliminated the practice of § 924(c) sentence stacking.　See 132 Stat. 5221–5222.　Although it had previously considered applying this amendment to all § 924(c) offenders (including those with final sentences), see S. 2123, 114th Cong., 1st Sess., § 104(b)(2) (2015) (reported by Committee), Congress settled on a far narrower retroactivity command:

> "APPLICABILITY TO PENDING CASES.—This section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment."　132 Stat. 5222.

On the "date of enactment," petitioners' 2012 sentences remained in full force.　As such, petitioners did not move to reduce their sentences in the immediate aftermath of the Act's passage.

But several strokes of good fortune soon came petitioners' way. The year after Congress passed the First Step Act, we held in *United States* v. *Davis*, 588 U. S. 445, 448 (2019), that §924(c)'s residual clause is unconstitutionally vague. Then, later that same year, the Fifth Circuit determined that *Davis* should apply retroactively. See *United States* v. *Reece*, 938 F. 3d 630, 635 (2019). Seeking to take advantage of these fortuitous developments, petitioners successfully moved to set aside some, though not all, of their §924(c) convictions that were predicated on the residual clause. Although the District Court could have vacated petitioners' sentences for only those invalid §924(c) counts, petitioners caught yet another lucky break. The District Court opted to vacate their entire sentences and ordered plenary resentencing on the remaining counts. Petitioners now try to push their luck even further, contending that the District Court should apply the First Step Act's reduced mandatory minimum for their remaining §924(c) counts.

## II

As all agree, petitioners' argument requires us to interpret what Congress meant when it said "a sentence for the offense has not been imposed as of [the Act's] date of enactment." What first jumps out about this provision is that Congress used the present-perfect tense in the phrase "has not been imposed." The present-perfect tense "denotes an act, state, or condition that" is either (1) "now completed" or (2) "continues up to the present." The Chicago Manual of Style §5.132, p. 268 (17th ed. 2017).

Context often indicates whether a speaker is using the former sense of the present-perfect tense (*e. g.*, "he has been awarded a trophy") or the latter sense of the present-perfect tense (*e. g.*, "he has trained for a trophy for the last three years"). See B. Garner, The Chicago Guide to Grammar, Usage, and Punctuation 97 (2016). Consider the following example. Suppose I ask a man passing by a courthouse,

"Has a sentence been imposed on John Smith?" He could respond either, "Yes, on July 1" or "Yes, since July 1." The former response is perhaps the more natural one, and it assumes I asked for the historical fact of Smith's sentencing in the indefinite past. The latter response is correct (though perhaps awkward), and it assumes I asked about the continuing legal validity of Smith's sentence up to the present.

The First Step Act's "grammatical structure conceivably leaves some room for either reading," *United States* v. *Uriarte*, 975 F. 3d 596, 607 (CA7 2020) (en banc) (Barrett, J., dissenting), but petitioners lose either way. On one hand, the phrase "a sentence . . . has . . . been imposed as of [the Act's] date of enactment" could refer to the historical fact that a district court imposed a sentence before the Act's passage, regardless of whether that sentence remains legally valid in the future. This "historical-fact interpretation" plainly forecloses relief for petitioners because, as no one disputes, the District Court first imposed their sentences well before the Act's passage.[1] On the other hand, "a sentence . . . has . . . been imposed as of [the Act's] date of enactment" could mean that a defendant was subject to a legally valid sentence that continued to be in force on the Act's enactment date. But again, petitioners *did* have legally valid sentences "as of [the Act's] date of enactment," so they lose under this "legal-validity interpretation" of the Act too.[2]

---

[1] The Court dismisses the historical-fact interpretation out of hand because, as it understands English grammar, the present-perfect tense requires "a connection to the present." *Ante*, at 428, n. 5. But before pronouncing new rules of grammar, the Court might first consider consulting the authorities it cites. See, *e. g.*, R. Huddleston & G. Pullum, The Cambridge Grammar of the English Language 144 (2002) (noting the "present perfect allows for the inclusion, under restrictive conditions, of a past time adjunct"). As these authorities suggest, the present-perfect tense allows one to say, for example, "[h]e has got up at five o'clock," *ibid.* (emphasis deleted), or "he has played golf before yesterday."

[2] The Act's requirement that a sentence "has . . . been imposed *as of [the Act's] date of enactment*" provides an essential temporal benchmark for both the historical-fact and the legal-validity interpretation. Remark-

Realizing the Act's use of the present-perfect tense alone cannot help petitioners, the Court invents a novel "vacatur" principle to supercharge the legal-validity interpretation. The Court tells us that the First Step Act incorporates the background "presumption" that "vacated court orders are void *ab initio* and thus lack any prospective legal effect." *Ante*, at 431. This revamped version of the legal-validity interpretation means that "a sentence . . . has . . . been imposed as of [the Act's] date of enactment" if a defendant receives a legally valid sentence before the Act's passage and that sentence is never, at any future time, vacated. Under this view, the 2022 vacatur of petitioners' 2012 sentences implies that, "[b]y operation of [a] legal fiction," their 2012 sentences "never occurred" and so could not have been legally valid as of the Act's enactment date. *Ibid.*

The Court's vacatur-inflected legal-validity interpretation thus rests on two necessary premises. First, the legal-validity interpretation is superior to the historical-fact interpretation. Second, the Act incorporates the "vacatur" principle. If either premise falters, so does the Court's interpretation. In my view, there is little doubt that both of the necessary premises fail.

───────

ably, however, the Court reads this requirement out of the Act entirely. The Court insists that sentencing courts should "read" the First Step Act at "the moment of resentencing," without any reference to the Act's enactment date. *Ante*, at 429, n. 7. But the Court is mistaken. It starts on the right foot, acknowledging the "widely accepted modern legislative drafting convention that a law should *not* be read to speak as of the date of enactment." *Carr* v. *United States*, 560 U. S. 438, 463 (2010) (ALITO, J., dissenting). This "convention" provides that, "except in unusual circumstances," "all laws . . . should be written in the present tense" to ensure that a "'legislative provision speaks as of any date on which it is read (rather than as of when drafted, enacted, or put into effect).'" *Ibid.* (quoting Senate Office of the Legislative Counsel, Legislative Drafting Manual § 103(a), p. 4 (1997) (emphasis deleted)). But the First Step Act *is* such an "unusual circumstanc[e]" in which Congress deviated from this "convention." The Act takes the unusual steps of referencing the date on which it was "enacted" and employing the present-perfect tense, not the ordinary present tense.

## III

### A

To start, the most plausible reading of the retroactivity provision is that "a sentence . . . has . . . been imposed" when, as a matter of historical fact, a district court has sentenced a defendant. Subsequent *legal* changes—such as the vacatur of a previously imposed sentence—do not change the purely *historical* fact that a defendant was, at a point in time, actually sentenced. When the Act asks whether a sentence "has . . . been imposed," it refers to the unchanging historical fact of sentencing and whether it occurred before the "date of enactment."

To see why, begin with the word "imposed." A "sentence is imposed" when there is a "pronouncement of judgment." *Lott* v. *United States*, 367 U. S. 421, 426 (1961); see *Young* v. *United States*, 943 F. 3d 460, 463 (CADC 2019) ("[I]n ordinary usage a sentence is 'imposed' when the district court pronounces it"). The Sentencing Reform Act treats the "imposition" of a sentence as the moment when a district court "state[s] in open court the reasons for . . . the particular sentence." 18 U. S. C. § 3553(c); Black's Law Dictionary 1470 (12th ed. 2024) (defining "pronounce" as "announce formally"). The word "imposed" is thus most naturally understood to refer to a concrete "action by a district court" that occurs at a specific point in time. *Uriarte*, 975 F. 3d, at 607 (Barrett, J., dissenting); see also *United States* v. *Carpenter*, 80 F. 4th 790, 791 (CA6 2023) (Kethledge, J., concurring in denial of rehearing en banc) ("[T]he act of imposing a sentence could not possibly 'continue up to the present'— because the imposition of a sentence occurs at a fixed point in time"). A defendant may be sentenced, resentenced, and resentenced again, and at each hearing a sentence is "imposed" even if some of those sentences are later set aside as legally invalid.

Our cases and other provisions of Title 18 confirm that the word "imposed" marks the historical point at which a sentence is pronounced regardless of whether that sentence has continuing legal validity.   For example, in the midst of a discussion about plenary resentencing (a topic of particular relevance to these cases), we once noted that "[i]n remanded cases . . . trial courts have imposed a sentence on the remaining counts longer than the sentence originally *imposed* on those particular counts."  *Greenlaw* v. *United States*, 554 U. S. 237, 253 (2008) (emphasis added).   In another case, a joint opinion of the Court noted that the "death sentences *imposed* for armed robbery, however, were vacated."   *Gregg* v. *Georgia*, 428 U. S. 153, 161–162 (1976) (opinion of Stewart, Powell, and Stevens, JJ.) (emphasis added).   In both instances, our use of "imposed" signified only that a court had, at some point in time, pronounced a sentence.   Our use of "imposed" could not possibly be understood to refer to the legal validity of those later-invalidated sentences.   Further, in other parts of Title 18, Congress uses "imposed" to signify the historical fact of a sentence, not its continuing legal validity.   See, *e. g.*, §3742(a)(2) (allowing a defendant to appeal "an otherwise final sentence if the sentence . . . was imposed as a result of an incorrect application of the sentencing guidelines"); §3742(f)(1) (empowering courts of appeals to remand on a finding that "the sentence was imposed in violation of law").   I see no reason to think Congress intended a different meaning of "imposed" in another provision of Title 18.

Additional support for the historical-fact interpretation is found in Congress's use of the phrase "a sentence."   The word "a" is an "indefinite article" that "points to a nonspecific object, thing, or person that is not distinguished from the other members of a class."   B. Garner, Modern English Usage 1195 (5th ed. 2022) (Modern English Usage).   "When used as an indefinite article, 'a' means '[s]ome undetermined

or unspecified particular.'" *McFadden* v. *United States*, 576 U. S. 186, 191 (2015) (quoting Webster's New Internal Dictionary 1 (2d ed. 1954)). In that sense, Congress's use of the indefinite article lends a broad construction to the word "sentence," as if to say "any sentence" ever imposed, including a later-vacated sentence. In conjunction with the word "imposed," the phrase "a sentence" thus puts the statutory focus on the existence of any kind of sentence pronounced in the record, regardless of that sentence's present legal status.

Indeed, contrary to the Court's suggestion, the word "sentence" does not ineluctably mean a "legally valid" sentence. Our own cases prove the point because we have often found it necessary to clarify whether a sentence is valid or invalid. See, *e. g.*, *Swarthout* v. *Cooke*, 562 U. S. 216, 220 (2011) (*per curiam*) ("There is no right under the Federal Constitution to be conditionally released before the expiration of a *valid* sentence" (emphasis added)); *Pollard* v. *United States*, 352 U. S. 354, 357, 360 (1957) ("The only *sentence* that was entered at the 1952 hearing was the one of probation, admittedly *invalid* because of petitioner's absence" (emphasis added)); *Richmond* v. *Lewis*, 506 U. S. 40, 43 (1992) ("[P]etitioner's conviction was found valid but his sentence *invalid*" (emphasis added)); see also *Uriarte*, 975 F. 3d, at 607 (Barrett, J., dissenting) ("That is why it is perfectly coherent to describe the procedural posture of a case by saying, 'a sentence was imposed last year, but it has since been vacated on appeal'"). If Congress sought to narrow "a sentence" in a specialized way to indicate a legally valid sentence, it could have referred to "a final sentence," "a legally valid sentence," or more prosaically, "the sentence." Accord, *United States* v. *Hernandez*, 107 F. 4th 965, 969 (CA11 2024).

Reading the retroactivity provision in context, the phrase "a sentence has not been imposed" most straightforwardly means that a district court has not, as a matter of historical fact, sentenced a defendant for his § 924(c) offenses before the Act's "date of enactment." So how can the Court read

the same text to refer to a *presently valid* sentence, rather
than one that was historically "imposed" in the past?   See
*ante*, at 431.   Bizarrely, the Court's analysis begins and ends
with Congress's use of the present-perfect tense.   Through
the use of a single hypothetical, which does not resemble the
structure of the provision actually before us, the Court
draws the conclusion that "the present-perfect tense conveys
to a listener that the event in question continues to be true
or valid."    *Ante*, at 429.   But, as I have explained, the pres-
ent-perfect tense is, as a general matter, capable of support-
ing either the historical-fact or legal-validity interpretation.
The surrounding context and the specific words Congress
employed indicate how the present-perfect tense may sup-
port one interpretation or the other.   As to the actual words
in the retroactivity provision ("imposed," "a sentence"), the
Court's textual analysis in Part III–A is silent.[3]   The

---

[3] The Court's legal-validity interpretation also rests on the mistaken
premise that the past-perfect tense best captures the historical-fact inter-
pretation.   The Court claims "if an event is merely a relic of history be-
cause it was voided by a subsequent action, the past-perfect (not the
present-perfect) tense would usually be the more appropriate verb
choice."    *Ante*, at 429–430.   I hope readers do not look to this Court as
an authority on English grammar because this broad pronouncement is
badly mistaken.   As support for its grammatical rule, the Court offers a
hypothetical: suppose a U. S. Olympic Committee rule says that "athletes
may call themselves Olympic champions if a gold medal 'has been awarded'
to them."    *Ante*, at 428.   If the Olympic gold medalist is stripped of her
medal, however, the Court claims she can no longer call herself an "Olym-
pic champion" under the rule.   To enable our athlete to still call herself
an Olympic champion based on her now-stripped medal, the Court tells us
"the past-perfect" tense would be "more appropriate" (*e. g.*, "she *had* been
awarded such a medal").    *Ante*, at 429–430.   That is highly debatable.
  The only lesson taught by the Court's example is that the meaning of
language is heavily dependent on context.   The obvious purpose of the
hypothetical rule is to restrict the class of individuals who are entitled to
the honor of calling themselves Olympic champions, and the Court pre-
sumes that the athlete in question lost her medal because she engaged in
improper conduct, *e. g.*, taking performance-enhancing drugs.   But sup-
pose the medal was taken away for an illegitimate reason.   Some histori-

Court's failure to defend the legal-validity interpretation is thus an independently fatal blow to its holding.

B

Assuming the Court had proved up the legal-validity interpretation, it would still need to establish its "vacatur" principle. That is, it would still need to prove not only that the Act is concerned with a sentence's continuing legal validity up to the "date of enactment," but also that the Act hinges on the continuing validity of a sentence *after* the date of enactment. The Court can prove as much only by inventing a "legal fiction" that a vacated sentence "never occurred." *Ante*, at 431. But one need only scratch the surface of this purported "legal fiction" to understand how thoroughly unpersuasive it is.

As a preliminary matter, the Court's "vacatur" principle does not exist. The Court assures us that there is a well-established principle in the criminal law that "vacated court orders are void *ab initio* and thus lack any prospective legal effect." *Ibid.* It derives this rule by over-reading a few

_____

ans think that Jim Thorpe, a legendary Native American athlete who dominated the 1912 Olympics, was stripped of his medals at least in part because of racism. See B. Crawford, All American: The Rise and Fall of Jim Thorpe 209–210 (2005); J. Elfers, The Tour To End All Tours: the Story of Major League Baseball's 1913–1914 World Tour 18 (2003). That was not completely undone until 2022, long after Thorpe died. See V. Mather & T. Panja, Jim Thorpe Is Restored as Sole Winner of 1912 Olympic Gold Medals, N. Y. Times, July 15, 2022. Suppose Thorpe had been asked: "Have you ever been awarded an Olympic medal?" Would he have been a liar if he answered "yes"? The Court seems to think so.

Indeed, the Court offers no answer to the argument that the present-perfect tense may be properly used to refer to a past event that was later undone. Instead, the Court promises readers that an answer will come in Part IV of its opinion—*i. e.*, the portions in which only three Justices join. See *ante*, at 429, n. 6. But this promise goes unfulfilled. Part IV contains no *deus ex machina* to salvage the Court's interpretation; rather, Part IV throws a celebration for the First Step Act, perhaps hoping readers lose sight of the text behind all the confetti.

creative turns of phrase in our cases. See *ante*, at 432 (citing *North Carolina* v. *Pearce*, 395 U. S. 711, 721 (1969) (stating vacatur causes a conviction to be "'wholly nullified and the slate wiped clean'"); *Pepper* v. *United States*, 562 U. S. 476, 507 (2011) (noting vacatur "'wipe[s] the slate clean'")). But a more careful reading of our precedents and other provisions in Title 18 indicates that vacatur does not erase the historical fact of a previously imposed conviction or sentence. Further, even if the "vacatur" principle exists, the Act's retroactivity provision does not incorporate it.

1

Our precedents foreclose the Court's "vacatur" principle. Take, for example, one of the cases the Court cites, *Lewis* v. *United States*, 445 U. S. 55 (1980). See *ante*, at 432. There, the defendant challenged his conviction under a federal statute prohibiting "'[a]ny person who . . . has been convicted by a court of the United States or of a State'" from "'receiv[ing], possess[ing], or transport[ing] . . . any firearm.'" 445 U. S., at 56, and n. 1 (quoting 18 U. S. C. § 1202(a) (1970 ed.)). The defendant argued that his predicate state conviction was invalid because he lacked counsel and that, as such, he could not be convicted as a felon in possession under the federal statute. We assumed that the predicate state conviction was subject to invalidation (*i. e.*, vacatur), see 445 U. S., at 58, but we nevertheless upheld the felon-in-possession conviction. We reasoned that the statute's "sweeping" language, which is phrased in the present-perfect tense just like the First Step Act, focused on "the fact of a [predicate] felony conviction." *Id.*, at 60. At the time of his federal offense, the defendant's state conviction was extant and thus disabled him from firearm possession. Congress made "[n]o exception" for "a person whose outstanding [predicate] conviction ultimately might turn out to be invalid for any reason." *Id.*, at 62. So a subsequent invalidation of his state predicate conviction due to his lack

of counsel would not render that conviction "invalid for all purposes." *Id.*, at 67. *Lewis* thus powerfully refutes the Court's vacatur principle. If vacatur of the defendant's predicate conviction implied the conviction "never occurred," as the Court today insists, then his felon-in-possession conviction could not stand. *Ante*, at 431. But that is the very argument *Lewis* foreclosed.[4]

Although it supports the petitioners in this appeal, the United States also concedes (albeit sheepishly in a footnote) that the Court's "general background legal principle that vacatur makes a sentence void from the start for all purposes" is "incorrect." Brief for United States 27, n. 4 (internal quotation marks and alterations omitted). As it acknowledges, lower courts routinely follow *Lewis* and uphold convictions despite the later vacatur of predicate offenses. See, *e. g.*, *Burrell* v. *United States*, 384 F. 3d 22, 27–28 (CA2 2004) ("[I]t is the mere fact of [a prior] conviction at the time of the charged possession, not the reliability of the conviction, that establishes the §922(g)(1) predicate" (internal quotation marks omitted)); *United States* v. *Roberson*, 752 F. 3d 517, 522 (CA1 2014) (upholding a conviction for failure to register as a sex offender even though the predicate sex offense was later vacated).

Moreover, as the United States also acknowledges, *Lewis*'s logic crosses into the constitutional context. Consider *Bravo-Fernandez* v. *United States*, 580 U. S. 5 (2016), in which we considered the application of issue preclusion

---

[4] In responding to *Lewis*, the Court accidentally fires on its own position. The Court justifies *Lewis*'s holding by explaining that "the defendant's prior felony conviction had 'never been overturned'—*i. e.*, vacated—at the time he possessed the weapon." *Ante*, at 432, n. 8 (quoting *Lewis* v. *United States*, 445 U. S. 55, 57 (1980)). But that is precisely the point. *Lewis* afforded "prospective legal effect" to the defendant's vacated conviction by refusing to ignore the historical fact of his predicate conviction even after the vacatur. I see no way to reconcile that reasoning with the Court's rule that a vacated sentence never "retains prospective legal effect." *Ante*, at 432, n. 8.

under the Double Jeopardy Clause when a jury returns inconsistent verdicts. It is well established that if a jury convicts on one count but acquits on another count involving the same conduct, the acquittal has no issue preclusive effect. See *id.*, at 13. Likewise, if a jury acquits on one count but fails to reach agreement on another count, the acquittal has such an effect. See *id.*, at 13–14. In *Bravo-Fernandez*, a jury convicted on one count but acquitted on others that were claimed to involve the same conduct. The conviction, however, was vacated due to "an unrelated legal error," and the defendant argued that the Court should treat the conviction as if it had never occurred and that the acquittal had issue preclusive effect barring reprosecution. *Id.*, at 9. We rejected this argument, holding that the conviction's later invalidation did not "erase" its historical existence for the purposes of issue preclusion because the vacatur did not "bear on the factual determinations actually and necessarily made by the jury." *Id.*, at 21 (internal quotation marks omitted). *Bravo-Fernandez* thus treated the historical fact of a later-vacated conviction as legally relevant, which is irreconcilable with the Court's "vacatur" principle.

The only "'unexpressed presumptio[n]'" I can derive from our cases and those from the courts of appeals is the opposite of the one the Court advances today. *Ante*, at 431 (quoting *Bond* v. *United States*, 572 U. S. 844, 857 (2014)).

2

Congress too has rejected the Court's "vacatur" principle. In the Sentencing Reform Act, Congress "se[t] forth a special . . . background principle" that is incompatible with the "vacatur" rule invented today. *Dorsey* v. *United States*, 567 U. S. 260, 275 (2012) (emphasis deleted).[5] That is, after a sentence is vacated, a district court during resentencing

---

[5] In *Dorsey*, 567 U. S., at 275, we referred to 18 U. S. C. § 3553(a)(4)(A)(ii) as establishing the relevant "background principle." That provision incorporates by reference the anti-vacatur rule of § 3742(g).

must apply the Sentencing Guidelines that "were in effect on the date of the previous sentencing of the defendant prior to the appeal." 18 U. S. C. § 3742(g)(1). The vacatur of an initial sentence thus does not "wipe the slate clean" in relation to the Guidelines range. Contra, *Pepper*, 562 U. S., at 507. Petitioners try to write off this provision as a deviation from the background presumption that vacatur voids a sentence *ab initio.* See Brief for Petitioner Hewitt 24; Brief for Petitioner Duffey et al. 47. But § 3742(g)(1)'s anti-vacatur rule cannot be described as a minor exception to an otherwise widespread principle. The rule does not appear in some "little-used backwater" of the Sentencing Reform Act. *West Virginia* v. *EPA*, 597 U. S. 697, 730 (2022). Rather, it is incorporated into the default procedures that apply in every criminal sentencing.[6] See §§ 3553(a)(4)(A)(ii), (a)(5)(B).

In short, the Court's failure to "sho[w] that its *own* rule . . . existed as a background matter when Congress enacted" the First Step Act is fatal to its position. *Coinbase, Inc.* v. *Bielski*, 599 U. S. 736, 753–754 (2023) (JACKSON, J., dissenting).

3

Even assuming the "vacatur" principle is not a figment of the Court's imagination, it lacks any foothold in the Act's text. "When called on to resolve a dispute over a statute's meaning, this Court normally seeks to afford the law's terms their ordinary meaning at the time Congress adopted them." *Niz-Chavez* v. *Garland*, 593 U. S. 155, 160 (2021). Of course, we sometimes look to principles beyond the four corners of

---

[6] The portion of the opinion in which only three Justices join expresses concern that, under the historical-fact interpretation, district judges will struggle "to reference, recall, and apply the superseded 'stacking' regime." *Ante*, at 440. But I have far more faith in district judges' ability to enforce older sentencing regimes. Indeed, district judges' familiarity with 18 U. S. C. § 3742(g), which routinely requires them to apply obsolete Sentencing Guidelines in the present, is proof positive.

a statute to understand the background against which Congress legislated. But we typically do so in discrete situations. For example, we look to background common-law principles to fill in obvious gaps in statutes, such as a missing *mens rea* element in a criminal statute. See, *e. g.*, *Staples* v. *United States*, 511 U. S. 600, 619 (1994) (*mens rea*); *Agency Holding Corp.* v. *Malley-Duff & Associates, Inc.*, 483 U. S. 143, 150 (1987) (statutes of limitations); *Marx* v. *General Revenue Corp.*, 568 U. S. 371, 382 (2013) (attorney's fees and costs). Or we import extra-textual meaning when Congress employs a "term of art that had an established meaning under" a relevant "backdrop." *Stewart* v. *Dutra Constr. Co.*, 543 U. S. 481, 487 (2005).

The First Step Act fits neither mold, and the Court makes no effort in Part III–B to analyze how its "vacatur" principle maps on to the text. The Court points to no obvious gap in the Act's retroactivity provision that could be filled with "recognized" "background principles of construction." *Bond*, 572 U. S., at 857. Nor does the Court suggest that the utterly ordinary words in the Act's retroactivity provision carry some specialized meaning related to vacatur. "In the absence of some strong contrary indication" of specialized meaning, we must "assume that the ordinary meaning" of words like "sentence," which captures both extant and vacated sentences, "controls." *Monsalvo Velázquez* v. *Bondi*, 604 U. S. 712, 751 (2025) (ALITO, J., dissenting); see Part III–A, *supra*.

C

The superiority of the historical-fact interpretation and the nonexistence of the Court's "vacatur" principle are independent reasons to reject the Court's holding. But even if the matter were close, two more factors counsel against the Court's rule.

*First*, the retroactivity provision's title—"APPLICABILITY TO PENDING CASES"—advises against the Court's boundless interpretation. "[T]he title of a statute and the heading of

a section are tools available for the resolution of a doubt about the meaning of a statute." *Dubin* v. *United States*, 599 U. S. 110, 120–121 (2023) (internal quotation marks omitted); see also *Yates* v. *United States*, 574 U. S. 528, 552 (2015) (ALITO, J., concurring in judgment) ("Titles can be useful devices to resolve doubt about the meaning of a statute" (internal quotation marks omitted)).   Here, the phrase "Pending Cases" suggests Congress was concerned with the finite population of defendants who, on the date of the First Step Act's enactment, lacked an initial sentence for § 924(c) offenses. See Black's Law Dictionary, at 1366 (defining "pending" as "[r]emaining undecided; awaiting decision"); Modern English Usage 813 (defining "pending" as "awaiting an outcome"). But the Court's "vacatur" principle would obliterate that closed set and refashion the retroactivity provision as an open-ended entitlement for any defendant convicted of multiple § 924(c) offenses whose sentence is vacated at any time and for any reason.   That means, as the United States concedes, the "universe" of "Pending Cases" would "increase," for example, "anytime this Court issues a decision that affects the validity of 924(c) sentences."   Tr. of Oral Arg. 49. If Congress intended the retroactivity provision to benefit such an amorphous population that may forever grow in size, I seriously doubt it would have labeled the Act's retroactivity provision with the phrase "Pending Cases."

*Second*, the presumption against retroactivity further weighs against the Court's unnecessarily broad interpretation.   The Federal Saving Statute sets forth "an important background principle of interpretation" that "a new criminal statute that 'repeal[s]' an older criminal statute shall not change the penalties 'incurred' under that older statute 'unless the repealing Act shall so expressly provide.'"   *Dorsey*, 567 U. S., at 272, 274 (quoting 1 U. S. C. § 109).   Accordingly, Congress may give retroactive effect to new reductions in criminal penalties, but it must do so with "plain import" or "fair implication."   567 U. S., at 275 (internal quotation

marks omitted). Here, the First Step Act provides a clear intent to rebut the presumption against retroactivity as to offenders for whom a sentence "has not been imposed." Although I believe the scope of that retroactivity command is sufficiently clear for the reasons I have already given, to the extent there is any ambiguity about how far the Act's retroactivity command should go, the presumption puts a thumb on the scale against construing the retroactivity command to its broadest extent as the Court does today.

## IV

After the Court is through with the text and nonexistent principles of vacatur, three Justices continue on for pages, sparing no effort, to extol the "much-anticipated, much-heralded" First Step Act. *Ante*, at 436. But what is the point of all this lauding? Perhaps realizing the weakness of their textual argument, the three Justices think it wise to spruce up the opinion. They attempt to do so by asserting that when a "'bipartisan'" "supermajority" of Congress passes "landmark" legislation, it intends to go big, down to the very last subsection (or here, application note to a subsection). *Ante*, at 424; *ante*, at 436 (opinion of JACKSON, J., joined by SOTOMAYOR and KAGAN, JJ.). So I gather they would have us broadly construe every atom of the "landmark" First Step Act in a way that furthers Congress's supposedly grand ambition to turn the page on "harsh" sentencing practices. *Ante*, at 437.

There is no "landmark" canon of construction requiring the Court to construe important legislation to its furthest possible implication. "'[N]o legislation pursues its purposes at all costs.'" *American Express Co.* v. *Italian Colors Restaurant*, 570 U. S. 228, 234 (2013) (quoting *Rodriguez* v. *United States*, 480 U. S. 522, 525–526 (1987) (*per curiam*)). Indeed, just last Term we rejected the same sort of "landmark" argument when interpreting a different provision of the First Step Act. See *Pulsifer* v. *United States*, 601 U. S.

124, 151–152 (2024). Experience shows that more often than not, "landmark" legislation reflects the necessary log-rolling of the legislative process, which prizes political compromise over statutory clarity. That reality cautions against the precise move the Court makes today: an inference that Congress hid in an "ancillary" and intentionally circumscribed provision a retroactivity command that would "alter the fundamental details" of how § 924(c) sentencing should work for all time. *Whitman* v. *American Trucking Assns., Inc.*, 531 U. S. 457, 468 (2001).

The three-Justice opinion rattles off the public criticisms that supposedly spurred Congress to reform the practice of § 924(c) sentence "stacking." But this discussion is beside the point. Nothing in this multi-page discussion sheds light on how Members of Congress understood the retroactivity provision before us.

Carried away with its enthusiasm for the changes effected by the First Step Act, the three Justices bestow an entirely undeserved windfall on the actual petitioners in these cases. Due to the especially violent nature of their robberies,[7] petitioners were convicted of more than a dozen § 924(c) offenses, about half of which were not predicated on § 924(c)'s residual clause.

In 2019 we decided *Davis* and provided a basis to set aside petitioners' § 924(c) convictions under the residual clause, but *Davis* did nothing to disturb petitioners' other § 924(c) con-

---

[7] Dubbed the "Scarecrow Bandits" due to their plaid-shirt and floppy-hat disguises, petitioners and their confederates "violently robbed" a string of banks in the Dallas-Fort Worth area around 2008. 2009 WL 2356156, *1 (ND Tex., July 30, 2009); see FBI, Scarecrow Bandit Leader Sentenced to 355 Years in Federal Prison on Bank Robbery and Firearms Convictions (May 5, 2010). During the robberies, the Scarecrow Bandits held bank employees and customers at gunpoint and physically assaulted them with firearms and stun guns. See 2009 WL 2356156, *1. In total, the conspiracy stole more than $350,000 before authorities caught up with them. See Brief for United States 7.

victions and associated mandatory-minimum sentences. In cases "involv[ing] multicount indictments and a successful attack by a defendant on some but not all of the counts of conviction," a court, "in such instances, *may* vacate the entire sentence on all counts" and "reconfigure the sentencing plan" in toto. *Greenlaw*, 554 U. S., at 253 (emphasis added).[8] But, as petitioners' counsel conceded, courts are under "no obligation" to follow this convention and may instead choose to vacate only those parts of the sentence related to an intervening change in law. Tr. of Oral Arg. 15. Nor does this strike me as a case in which full vacatur was warranted. Section 924(c) convictions must run consecutively "with any other term of imprisonment." § 924(c)(1)(D)(ii). So § 924(c) sentences are presumably easier to identify and extract from a defendant's total term of imprisonment, often obviating the need for a plenary resentencing. The likely unnecessary vacatur of each petitioner's entire sentence was thus a stroke of good fortune that opened the door to petitioners' First Step Act claims.[9] The lower courts (correctly) rejected

_____

[8] The chief reason for vacating perfectly valid convictions in such cases is to allow the sentencing court to consider whether the sentence previously imposed on a valid count provides sufficient punishment for the defendant's conduct. See *Greenlaw*, 554 U. S., at 253–254. Suppose a defendant is convicted of two offenses, each with a 5-year mandatory minimum. The sentencing judge, thinking that the appropriate punishment for the defendant's criminal conduct is 10 years' imprisonment, imposes a 5-year term of imprisonment on both counts and runs the counts consecutively. If one of the counts of conviction is reversed and the case is remanded, the sentencing judge may wish to enlarge the initial 5-year sentence on the remaining count to 10 years' imprisonment. So the defendant "ultimately may gain nothing from his limited success on appeal." *Id.*, at 254. It is therefore ironic that the unnecessary vacatur of petitioners' valid convictions has given them a benefit.

[9] The District Court's willingness to vacate petitioners' entire sentences appears to have been informed by the position of the United States, which "agreed" with petitioners that the "sentences on all remaining counts should be vacated." Agreed Order in No. 3:08–cr–167 (ND Tex., Nov. 2,

ALITO, J., dissenting

those efforts, but petitioners have found a sympathetic audience in this Court. The three Justices attribute today's outcome to grand congressional design coming to fruition, but in reality, petitioners' change in fortune can be attributed only to the happenstance of legal developments with not the faintest relationship to the First Step Act.

\*       \*       \*

The Court ignores Congress's intention to afford only limited retroactive relief to certain offenders under the First Step Act. Instead, the Court embraces an interpretation that has no limiting principle and affords petitioners a windfall. That is an indefensible result based on indefensible reasoning. I cannot agree with the Court's decision, so I must respectfully dissent.

Page Proof Pending Publication

2021), ECF Doc. 700, p. 2 (Ross); see Agreed Order in No. 3:08–cr–167 (June 14, 2021), ECF Doc. 672, p. 2 (Duffey); Agreed Order in No. 3:08–cr–167 (Aug. 19, 2021), ECF Doc. 683, p. 2 (Hewitt).

REPORTER'S NOTE

The attached opinion has been revised to reflect the usual publication and citation style of the United States Reports. The revised pagination makes available the official United States Reports citation in advance of publication. The syllabus has been prepared by the Reporter of Decisions for the convenience of the reader and constitutes no part of the opinion of the Court. A list of counsel who argued or filed briefs in this case, and who were members of the bar of this Court at the time this case was argued, has been inserted following the syllabus. Other revisions may include adjustments to formatting, captions, citation form, and any errant punctuation. The following additional edits were made:

None